[No. 771-1.    Division One—Panel 2.    June 19, 1972.]

HARRY L. GRANT *et al., Appellants,* v. G. PATRICK
MORRIS *et al., Respondents.*

*Curtis, Butler & Barney* and *Michael S. Curtis,* for appellants.

*Mullavey, Hageman, Prout & Kirkland* and *Riddell, Williams, Voorhees, Ivie & Bullitt,* for respondents.

JAMES, J.—Plaintiffs Grant began this action in September, 1968, seeking only money damages. Plaintiffs claimed

that they had been induced to purchase a newly constructed 32-unit apartment house by false and fraudulent representations as to the net cash which would flow to them from its operation. Defendants Morris were the builders and sellers of the apartment, and defendant Capretto & Clark was their real estate agent.

Plaintiffs further claimed that although Capretto & Clark assured them that Morris was "one of Seattle's finest builders," he was in fact a novice and had built only one other apartment building. Plaintiffs asserted that there were substantial defects in the construction of the apartment.

The apartment was fully occupied at the time the sale was consummated on June 19, 1967, and the gross income was known. The alleged misrepresentation as to net cash flow resulted from Capretto & Clark's estimate that the annual real estate tax would be $7,500 and the personal property tax $150. By August of 1967, plaintiffs had learned that the annual real estate tax would be approximately $12,000. The personal property tax, payable for the first time in 1969, but levied in 1968, proved to be $558.

In June, 1969, plaintiffs amended their claim to seek rescission of the contract as an alternate remedy. In November, 1969, plaintiffs amended their claim to eliminate their prayer for damages and to seek only rescission of the contract. At trial, plaintiffs advanced three legal theories: fraudulent misrepresentation, negligent misrepresentation, and mutual mistake of fact.

Plaintiffs occupied and managed the apartment continuously from June 19, 1967, until September, 1969, when they abandoned the property and tendered possession to defendants Morris.

The trial judge found the facts to be: that Capretto & Clark's statement that Morris was one of the best builders in Seattle was a mere statement of opinion and not a representation of fact; that plaintiffs knew that the taxes on the new building had not yet been assessed; that Capretto & Clark's low estimate of the taxes was a negligent rather than a fraudulent representation; that plaintiffs were

knowledgeable concerning the quality of construction; that they had inspected the apartment building before purchase; and that there was no mutual mistake of material fact.

The trial judge further found that plaintiffs had waived any right they may have had to rescind the contract: (a) by their failure to act promptly to rescind; (b) by continuing to make monthly payments through August of 1969; (c) by continuing to operate the apartment until September, 1969; (d) by endeavoring to sell the apartment at a profit during the years 1968 and 1969; and (e) by collecting advance rentals for the month of October, 1969, and by retaining tenants' damage deposits.

In addition, the trial judge found that the rental market for apartments was strong during 1967 and 1968, and that during the first 18 months of plaintiffs' operation, plaintiffs suffered no appreciable loss from vacancies. He found that the rental market weakened substantially in 1969 as the result of general economic conditions.

The trial judge concluded that under the facts as he found them, plaintiffs were entitled to damages, but not rescission. The judgment forfeited the contract, but granted plaintiffs an opportunity to reinstate, with an allowance for the repair of defects. Plaintiffs declined the opportunity to reinstate, and this appeal followed.

██ Plaintiffs' principal argument on appeal is that their June, 1969, amendment "related" their claim for rescission back to September, 1968, the date of their original pleading. Plaintiffs ground their argument upon their interpretation of the purpose and effect of CR 15(c):

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

Plaintiffs' theory is that because their June, 1969, claim for rescission "relates" back to September, 1968, when they commenced the damage action, the trial judge improperly considered their conduct subsequent to September, 1968,

as evidence of an intent to waive the right to claim rescission.

Plaintiffs argue that the policy in Washington is the same as in the federal courts: CR 15(c) " 'is to be liberally construed on the side of allowance of amendments . . .' " *DeSantis v. Angelo Merlino & Sons, Inc.*, 71 Wn.2d 222, 225, 427 P.2d 728 (1967). The policy in support of liberal construction is summarized in 3 J. Moore, Federal Practice ¶ 15.15[3] at 1027 (2d ed. 1968):

> And an amendment which changes only the legal theory of the action, or adds another claim arising out of the same transaction or occurrence, will relate back. Thus, an amendment will relate back which changes the theory of recovery as to the type of negligence claimed, or adds additional grounds of negligence, changes the theory of the action from one based on contract to one sounding in tort, changes a demand for equitable relief to one for legal relief, states a different fulfillment of conditions precedent, or increases the amount of damages claimed.

(Footnotes omitted.)

However, plaintiffs *were* permitted to amend their claim, and defendants' motion to dismiss plaintiffs' claim for rescission on the theory that plaintiffs had made an "election" was denied at the outset of trial. Plaintiffs' dilemma is not that they were denied permission to amend or that their amended claim would not relate back. The indulgence of the legal fiction of "relation back" allows the assertion of claimed rights, but cannot alter facts.

"Waiver" is a voluntary and intentional relinquishment of a known right. 56 Am. Jur. *Waiver* § 2 (1947). Whether or not there has been a voluntary and intentional waiver is a question of fact. *Hoke v. Stevens-Norton, Inc.*, 60 Wn.2d 775, 375 P.2d 743 (1962). In the absence of an express statement of intent, conduct will be considered as circumstantial evidence of intent. *Birkeland v. Corbett*, 51 Wn.2d 554, 320 P.2d 635 (1958). Delays and other actions which might not constitute a waiver of a right to claim damages can evidence an intent to waive a right to rescind. *Thomas v. McCue*, 19 Wash. 287, 53 P. 161 (1898); *Fines v.*

*West Side Implement Co.,* 56 Wn.2d 304, 310, 352 P.2d 1018 (1960).

The rule is that the party who desires to rescind a contract on the ground of fraud must, upon the discovery of the facts, at once (or at least reasonably quickly) announce his purpose and adhere to it.

Plaintiffs did not, upon discovery of the grounds upon which they relied at trial, promptly or within a reasonable time seek rescission. The trial judge properly interpreted plaintiffs' conduct to be circumstantial evidence of an intent to waive the right to claim rescission.

■ Mutual mistake is a ground for rescission only if there is a mistake of a material fact. *Ross v. Harding,* 64 Wn.2d 231, 391 P.2d 526 (1964). The trial judge properly concluded that defects which would cost approximately $5,000 to remedy were not material to a $525,000 transaction.

■ Since the trial judge's findings of fact are supported by substantial evidence, under the familiar *Thorndike* rule, we are bound by his findings. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959); *Huzzy v. Culbert Constr. Co.,* 5 Wn. App. 581, 489 P.2d 749 (1971). The trial judge's findings fully support his conclusions of law.

The judgment is affirmed.

FARRIS, A.C.J., and SWANSON, J., concur.

Petition for rehearing denied September 6, 1972.

Review denied by Supreme Court October 26, 1972.