# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE    SEP 1 2 2013

Madsen, C. J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Sep. 12, 2013

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) | No. 87529-4 |
| NADDER BARON HAGHIGHI, | ) ) | En Banc |
| Petitioner. | ) ) ) ) | Filed    SEP 1 2 2013 |

C. JOHNSON, J.—This case presents the question of whether our holding in *State v. Winterstein*, 167 Wn.2d 620, 220 P.3d 1226 (2009), that the inevitable discovery doctrine is inconsistent with article I, section 7 of the Washington State Constitution applies retroactively to judgments final when the case was decided. Because we hold that *Winterstein* does not apply retroactively, we must also address Nadder Baron Haghighi's claim that his appellate counsel provided ineffective assistance, which requires first determining whether this claim is timely. We affirm the Court of Appeals and hold that *Winterstein* announced a new rule and that Haghighi's ineffective assistance of appellate counsel claim is time barred.

## FACTS AND PROCEDURAL HISTORY

A jury convicted Haghighi of one count of theft in the first degree and seven counts of unlawful issuance of checks or drafts. The unlawful issuance of checks or drafts counts relate to checks drawn on an account he opened with Allstate Bank, which provides only internet banking. The theft count is tied to Venture Bank, a local operation. The underlying issue in this personal restraint petition (PRP) involves the admissibility of evidence obtained by way of a warrant issued in Washington but faxed to Allstate's offices in Illinois. The State does not dispute that this method of securing evidence from Illinois was improper.

Several victims initially identified Haghighi in a photo montage and provided copies of fraudulent checks he had written to them. Based on this information, police obtained a search warrant in Washington for Haghighi's bank records with Allstate. However, Allstate's office is in Illinois, and the detective faxed the warrant to Allstate's offices there. A representative at Allstate then provided the records requested by the detective, which did not comply with Illinois law on the domestication of out-of-state warrants.

Before trial, Haghighi moved to suppress the records on the grounds that the issuing court lacked jurisdiction to issue a warrant that would be served out of state. He did not, however, challenge the finding of probable cause upon which the

warrant was issued. Based on the improper search, he argued that the records should be excluded. Although the trial court found the warrant unenforceable in Illinois, it ruled Haghighi's constitutional rights had been properly considered and that under the inevitable discovery doctrine, the Allstate records should not be excluded. The court also denied Haghighi's request for an inevitable discovery evidentiary hearing.

After being convicted, Haghighi appealed. As relevant here, he argued that the State failed to prove it would have inevitably discovered the Allstate records and that the trial court erred in not allowing a hearing on the issue. In an unpublished decision, the Court of Appeals affirmed the convictions, concluding that the State would have inevitably discovered the Allstate records. *State v. Haghighi*, noted at 151 Wn. App. 1047 (2009).

When the Court of Appeals issued its decision, Haghighi's appointed counsel, Casey Grannis, wrote to Haghighi telling him of the decision. He stated that he did not think a motion for reconsideration would be successful but that Haghighi could file one himself if he so chose. Grannis also discussed filing a petition for review. He noted that he had been assigned to represent Haghighi only in the Court of Appeals but that occasionally and at its discretion his office extended the representation to petitions for review. He promised to follow up with

Haghighi about whether his office would file a petition for review but informed Haghighi that a petition for review was required if Haghighi planned to file a federal habeas corpus action.

On August 20, 2009, Grannis again wrote Haghighi, telling him about a case pending before this court on a competency issue similar to an issue in Haghighi's case. He offered to file a petition for review on that one issue, unless this court issued an unfavorable ruling before the deadline for filing. He did not believe the other issues warranted a petition for review. Grannis also informed Haghighi that he could file only one petition for review, so all issues needed to be raised. If he wanted to raise additional issues, he should hire an attorney or file pro se.

On September 14, Grannis wrote to Haghighi informing him that this court had issued an unfavorable ruling on the competency issue, so his office would no longer be filing a petition for review. He stated, "My substantive involvement with your direct appeal is now over, although I formally remain your attorney for the direct appeal in the Court of Appeals until the mandate terminating review is issued." Br. of Pet'r, App. E at 2. The mandate issued on September 25, 2009.

On December 22, Grannis wrote to Haghighi informing him of our decision in *Winterstein*, where we struck down the inevitable discovery doctrine as an exception to the exclusionary rule. He called this a "major change in the law" and

told Haghighi that although he was no longer Haghighi's attorney, Haghighi could file a PRP on the *Winterstein* issue, but generally only one PRP could be filed and it must be filed within one year. Pet'r's Suppl. Br., App. D at 1.

On March 6, 2010, Haghighi filed a timely PRP arguing several theories, including the *Winterstein* issue, but did not include an ineffective assistance of appellate counsel theory. Roughly 10 months later, on December 22, the chief judge dismissed all of the issues, except for the *Winterstein* issue. The judge appointed Grannis's firm to represent Haghighi, but on January 6, 2011, the firm notified the court it could not represent Haghighi due to a conflict, since ineffective assistance of counsel was an issue. The firm did not copy Haghighi on this letter or inform him of this issue.

On January 27, Nancy Collins from the Washington Appellate Project was appointed counsel. She filed an amended PRP and argued that the rule announced in *Winterstein* should apply to Haghighi and that Grannis had been ineffective in not presenting or preserving the inevitable discovery doctrine issue, especially with *Winterstein* before this court at the time. In a published opinion, the Court of Appeals rejected both arguments.[1] It held that *Winterstein* announced a new rule

---

[1] *In re Pers. Restraint of Haghighi*, 167 Wn. App. 712, 276 P.3d 311, *review granted*, 175 Wn.2d 1021, 287 P.3d 595 (2012).

that did not apply retroactively to Haghighi's case, which was final at the time. Further, it held that the ineffective assistance claim was added beyond the one-year time limit for PRPs and that equitable tolling should not be applied. Therefore, the claim was time barred. We granted review of this decision.

ANALYSIS

### a. Retroactivity

Since *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), this court has consistently and repeatedly followed and applied the federal retroactivity analysis as established in *Teague*. Oddly, the concurrence/dissent claims that *Teague*'s applicability is an "open question," concurrence in part/dissent in part at 16, but, even before *Teague*, we "attempted from the outset to stay in step with the federal retroactivity analysis." *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 324, 823 P.2d 492 (1992) (citing *In re Pers. Restraint of Sauve*, 103 Wn.2d 322, 326-28, 692 P.2d 818 (1985)).

In *St. Pierre*, we followed this precedent and adopted *Teague*, which we consistently applied in later cases. *E.g.*, *In re Pers. Restraint of Scott*, 173 Wn.2d 911, 271 P.3d 218 (2012); *In re Pers. Restraint of Eastmond*, 173 Wn.2d 632, 272 P.3d 188 (2012); *In re Pers. Restraint of Rhome*, 172 Wn.2d 654, 260 P.3d 874 (2011); *State v. Robinson*, 171 Wn.2d 292, 253 P.3d 84 (2011); *State v. Williams-*

*Walker*, 167 Wn.2d 889, 225 P.3d 913 (2010); *State v. Kilgore*, 167 Wn.2d 28, 216 P.3d 393 (2009); *State v. Abrams*, 163 Wn.2d 277, 178 P.3d 1021 (2008); *In re Pers. Restraint of Domingo*, 155 Wn.2d 356, 119 P.3d 816 (2005); *State v. Evans*, 154 Wn.2d 438, 114 P.3d 627 (2005); *In re Pers. Restraint of Markel*, 154 Wn.2d 262, 111 P.3d 249 (2005); *In re Pers. Restraint of Hinton*, 152 Wn.2d 853, 100 P.3d 801 (2004); *State v. Hanson*, 151 Wn.2d 783, 91 P.3d 888 (2004); *State v. Summers*, 120 Wn.2d 801, 846 P.2d 490 (1993); *In re Pers. Restraint of Rupe*, 115 Wn.2d 379, 798 P.2d 780 (1990). Similarly, the Court of Appeals has not questioned the applicability of the *Teague* framework. *E.g.*, *In re Pers. Restraint of Jagana*, 170 Wn. App. 32, 282 P.3d 1153 (2012); *In re Pers. Restraint of Haghighi*, 167 Wn. App. 712, 276 P.3d 311, *review granted*, 175 Wn.2d 1021, 287 P.3d 595 (2012); *In re Pers. Restraint of Hacheney*, 169 Wn. App. 1, 288 P.3d 619 (2012); *State v. Chetty*, 167 Wn. App. 432, 272 P.3d 918 (2012).

Here, although Haghighi argues for abandonment of *Teague*, he—in the concurrence/dissent's own words—"provide[s] no specific alternative." Concurrence in part/dissent in part at 14 n.16. In an attempt justify abandonment of our long-settled precedent, the concurrence/dissent points to *Danforth v. Minnesota*, 552 U.S. 264, 128 S. Ct. 1029, 169 L. Ed. 2d 859 (2008), where the United States Supreme Court held that *Teague* did not bind state courts. But

nothing in *Danforth* is new. We recognized this proposition in 2005 before the Supreme Court ever considered *Danforth*. *Evans*, 154 Wn.2d at 448-49. Moreover, as the concurrence/dissent acknowledges, other states have continued to apply their own analyses despite *Teague*. Concurrence in part/dissent in part at 15 ("'New York . . . has continued to rely on the [*Linkletter*] criteria, even post-*Teague*.'" (alterations in original) (quoting *People v. Marshall*, No. 3018/1995, 2013 WL 1729392, at *2 (N.Y. Sup. Ct. Apr. 19, 2013))). Finally, in *Danforth* itself the Court described the issue as whether "*Teague* constrains the authority of state courts to give broader effect to new rules," and stated, "We have never suggested that it does, and now hold that it does not." *Danforth*, 552 U.S. at 266. Thus, *Danforth* is not the groundbreaking case described by the concurrence/dissent but, rather, the United States Supreme Court's acknowledgment of a principle long established in our country's courts. The *Teague* framework is supported by roughly 25 years of precedent, and neither Haghighi nor the concurrence/dissent provide adequate basis for jettisoning such a firmly established principle of law.

Under the *Teague* analysis, a new rule of criminal procedure applies retroactively to all cases pending on direct review or not yet final. A new rule, however, will not apply retroactively to final judgments unless the rule places certain kinds of private conduct beyond the State's power to proscribe or requires

the observance of procedures implicit in the concept of ordered justice. A new rule is considered one that "'breaks new ground or . . . was not *dictated* by precedent existing at the time the defendant's conviction became final.'" *Eastmond*, 173 Wn.2d at 639 (quoting *Teague*, 489 U.S. at 301). Moreover, if "'reasonable jurists could disagree on the rule of law, the rule is new.'" *Eastmond*, 173 Wn.2d at 639-40 (quoting *Evans*, 154 Wn.2d at 444).

Haghighi argues that he should gain the benefit of our decision in *Winterstein*, where we held that the inevitable discovery doctrine is inconsistent with article I, section 7 of the Washington State Constitution. Before *Winterstein*, the Court of Appeals had upheld trial court decisions allowing evidence to be admitted under the inevitable discovery doctrine. *E.g.*, *State v. Avila-Avina*, 99 Wn. App. 9, 17, 991 P.2d 720 (2000), *abrogated by Winterstein*, 167 Wn.2d 620; *State v. Reyes*, 98 Wn. App. 923, 930, 993 P.2d 921 (2000), *abrogated by Winterstein*, 167 Wn.2d 620. Consistent with this Court of Appeals precedent, the Court of Appeals in Haghighi's case upheld the trial court's denial of the motion to suppress based on the inevitable discovery doctrine. Thus, if Haghighi is entitled to benefit from *Winterstein*'s rule, he arguably may have been entitled to suppression of the Allstate records. However, *Winterstein* was published shortly after Haghighi's

conviction became final. Thus, he must show that *Winterstein* was dictated by existing precedent and therefore not a new rule.[2]

The decision and analysis in *State v. O'Neill*, 148 Wn.2d 564, 62 P.3d 489 (2003), guides our resolution of this issue. There, the suspect had been lawfully detained but not arrested when police searched his car. Although there were numerous arguments regarding the propriety of this search, one of the State's arguments was that the evidence would have been inevitably discovered when the suspect was arrested. Contrary to Haghighi's argument here, in *O'Neill* we declined to address the broader issue of whether the inevitable discovery doctrine was ever valid under Washington law. We stated that the rule "cannot be applied in *these circumstances*." *O'Neill*, 148 Wn.2d at 592 (emphasis added). Further, we opted to "leave for another case the question whether the rule might apply in another context," which was "a question we ha[d] not decided." *O'Neill*, 148 Wn.2d at 592 n.11. Thus, *O'Neill* recognized the issue of inevitable discovery was unresolved and left the question unanswered. Not until *Winterstein* did we again consider and resolve the issue. Because we expressly left the issue undecided in *O'Neill* and based on the Court of Appeals' approach existing prior to *Winterstein*,

---

[2] Haghighi does not argue that the *Winterstein* rule placed certain kinds of private conduct beyond the State's power to proscribe or required the observance of procedures implicit in the concept of ordered justice.

Haghighi cannot establish that the "*Winterstein* rule" was an existing rule dictated by precedent. Since Haghighi's conviction was final when we decided *Winterstein*, he is not entitled to benefit from the rule announced in that case.

Haghighi also argues that we should not apply *Teague* because this is solely a state law claim. But as noted above, we have been consistent in our application of the *Teague* framework. Moreover, no explanation is offered as to why our state would favor finality of judgments to a lesser extent than the federal system. Thus, we see no reason to depart from our established retroactivity analysis.

Finally, Haghighi attempts to justify retroactive application of *Winterstein* based on the Rules of Appellate Procedure and the Revised Code of Washington, specifically RAP 16.4(c)(4) and RCW 10.73.100. As applicable here, both rules apply the same standard and permit relief in a personal restraint petition if "[t]here has been a significant change in the law" that is "material to the conviction" and "sufficient reasons exist to require retroactive application" of the new rule. By its terms, RAP 16.4 does not provide a separate avenue for relief. Rather, the rule is restricted to situations where the petitioner is entitled to relief under RCW 10.73.100. RAP 16.4(d). We have interpreted RCW 10.73.100 as a procedural rule that is entirely consistent with the federal retroactivity analysis. *Abrams*, 163 Wn.2d 277 at 291. For these reasons, Haghighi is not entitled to relief based on a

retroactive application of our decision in *Winterstein* under RAP 16.4 or RCW 10.73.100.

### b. Timeliness of the Ineffective Assistance of Appellate Counsel Claim

In the alternative, Haghighi argues that his appellate counsel was ineffective for not appealing the inevitable discovery issue or for not preserving the issue until *Winterstein* was decided. The Court of Appeals rejected this claim as untimely because, although Haghighi timely filed his initial PRP, his amended PRP adding the ineffective assistance of appellate counsel claim was not filed until more than one year after his appeal became final. Generally, a PRP is time barred when filed more than one year after the mandate issues, unless subject to an exception. RCW 10.73.090. No statutory exception exists, so Haghighi offers two distinct theories why we should reach the merits of his ineffective assistance of appellate counsel claim.

First, he argues that the ineffective assistance claim is not really a new claim because he is simply amending his original PRP, suggesting that this amendment should relate back to the original filing as might be allowed under CR 15(c). However, PRPs are governed by the Rules of Appellate Procedure, not the Civil Rules. Although the concurrence/dissent accuses us of adopting a new rule, we have consistently noted that the RAPs neither authorize nor prohibit amendments

to PRPs and have allowed amendment only if made within the one-year statutory time limit. *In re Pers. Restraint of Bonds*, 165 Wn.2d 135, 140, 196 P.3d 672 (2008). The concurrence/dissent argues that we approved of untimely "amendment" in *Bonds*, but that case involved equitable tolling, an entirely different doctrine than the "relating back" procedure contemplated by CR 15. Nothing in *Bonds* suggests that we approved of allowing untimely amendments to relate back in a PRP. CR 15 is simply inapplicable to the current case.

Moreover, we already rejected this very argument in *In re Personal Restraint of Benn*, 134 Wn.2d 868, 952 P.2d 116 (1998), where we recognized that the RAPs neither provide for a "relating back" procedure analogous to CR 15(c) nor allow the petitioner to add a later untimely claim. Thus, under both *Bonds* and *Benn*, an "amended" PRP does not relate back to the original filing and any "amendment" or new claim must be timely raised.[3]

Haghighi relies on *In re Personal Restraint of Wilson*, 169 Wn. App. 379, 279 P.3d 990 (2012), as a case where a new legal theory was added after the time bar. However, the court in *Wilson* did not allow the claim to relate back but instead

---

[3] The concurrence/dissent also cites *In re Personal Restraint of Pirtle*, 136 Wn.2d 467, 471 n.1, 965 P.2d 593 (1998), as a case where an untimely amendment was allowed to relate back to the initial filing. Though we did allow untimely issues to be brought, it is not clear that the court allowed the untimely PRP to "relate back" or if we equitably tolled the filing deadline. Regardless, we emphasized the extraordinary circumstances underlying the filing of the petition and that the death penalty was involved. The case does not cite CR 15(c), and there is certainly no indication that the court sought to overrule *Benn* on this point of law.

found it to be part of the original claim. There, defense counsel had proposed an erroneous jury instruction, and generally, review of such error is precluded under the invited error doctrine. But where the error is the result of ineffective assistance of counsel, review is not precluded. Thus, in order for the petitioner to prevail on his timely claim, he would have had to prove ineffective assistance of counsel, which made the claim "'part and parcel'" of the original claim and not a new claim. *Wilson*, 169 Wn. App. at 387.

Further, the ineffective assistance claim is, in fact, a new and separate claim. While the timely *Winterstein* issue is intimately tied to the ineffective assistance claim, the latter is a much broader issue requiring examination of when the representation started and ended, a lawyer's obligations to his clients, and whether Haghighi would have prevailed on appeal. Resolution of this issue rests on facts and legal theory entirely distinct from whether *Winterstein* applies retroactively. Thus, even if we were to allow the amended PRP to "relate back" to the original filing, the *Winterstein* issue is only part of the ineffective assistance of appellate counsel claim and, therefore, the claim did not arise out of the same "conduct, transaction, or occurrence" as required by CR 15(c).

Haghighi's second theory is that the time bar should be equitably tolled so that the untimely ineffective assistance of appellate counsel claim can be added.

We have recognized that the time bar in RCW 10.73.090 is not jurisdictional in nature and may, under limited circumstances, be subject to equitable tolling. Although this court has not previously settled what standard should be applied in this context, traditionally we have allowed equitable tolling when justice requires its application and when the predicates of bad faith, deception, or false assurances are met, and where the petitioner has exercised diligence in pursuing his or her rights. *Bonds*, 165 Wn.2d at 140-41.

In any context, the doctrine of equitable tolling is a narrow doctrine to be used only sparingly and not applicable more generally to "garden variety" claims of neglect. In determining whether the doctrine applies, its application must be consistent with the general purpose of the statute setting out the statute of limitations. *Bonds*, 165 Wn.2d at 140-41.

Consistent with the general rules and policies governing PRPs, we find it both unwise and unnecessary to expand the doctrine beyond the traditional standard. RCW 10.73.090's time bar promotes finality of judgments, a principle especially important in this context because a petitioner cannot obtain federal habeas corpus relief until his or her judgment is final. Any lower standard would require the courts to constantly define the doctrine's boundaries and call into question the statutorily established finality.

Moreover, the general framework governing PRPs shows that equitable tolling has a more limited role than exists in other contexts, which makes it necessary to adhere to a stricter standard. In a "normal" situation, equitable tolling might be the only way in which a party is not deprived of his or her remedy. In a collateral attack, however, the petitioner not only had the right to make numerous timely challenges in the form of appeals or other motions but he or she can also take advantage of multiple other grounds for tolling the statute of limitations. These other grounds include those expressed in RCW 10.73.100, including newly discovered evidence, facial invalidity of the judgment and sentence, and double jeopardy violations. We have also recognized the possibility of the actual innocence doctrine, which provides perhaps the broadest equitable protections where justice requires.[4] Thus, an expansive equitable tolling doctrine provides limited benefit to petitioners and adds unnecessary ambiguity in the law. Consistent with the narrowness of the doctrine's applicability, principles of finality, and the multiple avenues available for postconviction relief, we apply the civil standard and require the predicates of bad faith, deception, or false assurances, which Haghighi does not establish.

---

[4] *In re Pers. Restraint of Weber*, 175 Wn.2d 247, 284 P.3d 734 (2012); *In re Pers. Restraint of Carter*, 172 Wn.2d 917, 263 P.3d 1241 (2011).

Haghighi knew all the facts relevant to his ineffective assistance of counsel claim when he filed his initial appeal. He knew that Grannis had not raised the inevitable discovery doctrine in the Court of Appeals and that this court had subsequently held the doctrine unconstitutional under Washington law. Nothing prevented Haghighi from raising the ineffective assistance of appellate counsel claim when he initially filed his timely PRP. We agree with the Court of Appeals' conclusion that Haghighi's claims are time barred.[5]

## CONCLUSION

We affirm the Court of Appeals and hold that *Winterstein* announced a new rule from which Haghighi does not benefit because his case was final when *Winterstein* was decided. Further, we hold that Haghighi's ineffective assistance of appellate counsel is time barred.

---

[5] Even if the ineffectiveness of appellate counsel claim were considered, we find nothing ineffective in an attorney not raising a claim on appeal that had been rejected in the cases considering the issue and where no current case supported the theory.

No. 87529-4

WE CONCUR:

Madsen, C.J.

Fairhurst, J.

González, J.

No. 87529-4

GORDON McCLOUD, J. (concurring in part/dissenting in part)—The majority adopts a rule that drastically limits amendment of pleadings in the personal restraint petition (PRP) context. This rule conflicts with our jurisprudence allowing amendment of pleadings that comply with Civil Rule (CR) 15(c) in all other civil cases. I therefore dissent from the decision to affirm dismissal of Nadder Baron Haghighi's ineffective assistance of counsel claim.

I concur in the majority's decision that *Winterstein*[1] does not apply retroactively in this case. However, I write separately to emphasize how narrow that holding is. In 1989, the United States Supreme Court decided *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989). The 1989 *Teague* rule was designed for the express purpose of promoting federalism by granting greater deference to state high court decisions. In fact, *Teague* "was intended to limit the authority of federal courts to overturn state convictions—not to limit a state's

---

[1] *State v. Winterstein*, 167 Wn.2d 620, 220 P.3d 1226 (2009).

authority." *Danforth v. Minnesota*, 552 U.S. 264, 280, 128 S. Ct. 1029, 169 L. Ed. 2d 859 (2008). In 1992, however, this court adopted the federal *Teague* analysis and applied it to our review of lower court decisions. *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 324-26, 823 P.2d 492 (1992). This court did not do a thorough analysis of the state values at stake before adopting that somewhat inapposite federal rule. Then, in 2008, the United States Supreme Court decided *Danforth* and ruled, for the first time, that *Teague* was not designed for state courts and that state high courts can fashion their own retroactivity rules to serve their own state values. *Danforth*, 552 U.S. at 279-82.

This court has not yet done that post-*Danforth* analysis. The majority does not do so here—understandably, given that we have not been presented with a plausible alternative retroactivity theory under which Mr. Haghighi's claim would survive. Thus, despite its protestations to the contrary, the majority effectively leaves that question open for another day. I concur in that decision.

## I.    *Amendment of Pleadings*

The majority states that we have consistently rejected amendments to PRPs beyond the one-year time limit, *see* RCW 10.73.090, and that we should continue to do so in this case. The majority's statement that we "have allowed amendment only if made within the one-year statutory time limit," however, is not quite accurate. Majority at 13. Actually, our application of this rule has been inconsistent.

First, in *Vandervlugt*, we reviewed a claim brought as an untimely amendment to a timely PRP, and we granted relief. *In re Pers. Restraint of Vandervlugt*, 120 Wn.2d 427, 430-31, 436, 842 P.2d 950 (1992). Then, in *Pirtle*, we allowed an amendment to a PRP outside the one-year time limit because the case involved "unusual circumstances." We expressly stated that we were allowing the filing of his "amended PRP" outside the time limit. *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 471 n.1, 965 P.2d 593 (1998).

The majority now calls *Pirtle* a case of "extraordinary circumstances" to justify its decision to allow that amended PRP but not this one. Majority at 13 n.3. That sounds like an argument to replace the CR 15[2] standard for allowing amendment of pleadings in other civil cases, with a far higher "extraordinary circumstances" amendment of pleadings standard in civil cases like this involving deprivations of liberty, rather than of property. There is no rule, law, or policy that would justify that distinction.

After *Pirtle*, in *Bonds*, we indicated that equitable tolling could provide a way for a petitioner to add a claim after the one-year time limit. *In re Pers. Restraint of Bonds*, 165 Wn.2d 135, 140, 196 P.3d 672 (2008).[3]

---

[2] *See* discussion of CR 15, *infra* at pp. 5-8.

[3] Our reliance on RAP 16.10(c) to reach this conclusion made clear that equitable tolling could permit even an otherwise untimely amendment to a PRP. *Bonds*, 165 Wn.2d at 140 ("Though the appellate rules do not expressly authorize or prohibit amendments to PRPs, we have accepted amendments to a PRP made within the statutory time limit. This discretionary allowance accords with RAP 16.10(c), which permits an appellate court to call for additional briefs at any stage of consideration of a PRP.").

The majority is certainly correct that in *Benn*, we said that we could not allow amendments to relate back to the time of filing even "to serve the ends of justice," RAP 18.8(a), because that would mean waiving the statutorily required time limits of RCW 10.73.090 and "RAP 18.8(a) does not allow the court to waive or alter statutes." *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 939, 952 P.2d 116 (1998). That statement from *Benn*, however, predated *Pirtle*, which expressly allowed the petitioner to amend his PRP after the one-year time limit ran. That statement from *Benn* also conflicts with the result in *Vandervlugt* and with the discussion in *Bonds*, which indicated that equitable tolling might allow a petitioner to amend his PRP after the one-year time limit ran.

Further, that statement from *Benn* runs counter to the well-established rule that "[w]henever there is a conflict between a procedural statute and a court rule, the court's rulemaking power is supreme." *Nearing v. Golden State Foods Corp.*, 114 Wn.2d 817, 821, 792 P.2d 500 (1990). A statute of limitations is considered procedural.[4] Thus, if RCW 10.73.090 stood in conflict with RAP 18.8(a) on this procedural matter, RAP 18.8(a) would certainly be "supreme."

But I see no such conflict. Statutes of limitations are not strict jurisdictional prerequisites to suit. They are indisputably subject to certain other nonstatutory considerations—for example, equitable tolling. *See McQuiggin v. Perkins*, ___ U.S.

---

[4] *Merrigan v. Epstein*, 112 Wn.2d 709, 717, 773 P.2d 78 (1989) (quoting L. Orland & David G. Stebing, *Retroactivity in Review: The Federal and Washington Approaches*, 16 GONZ. L. REV. 855, 881-82 (1981)).

__, 133 S. Ct. 1924, 1931-35, 185 L. Ed. 2d 1019 (2013) (even mandatory federal statute of limitations on federal habeas may be tolled to serve the interests of justice, including a claim of actual innocence that did not support equitable tolling).

In fact, allowing amendment of PRPs after the statute of limitations has run—at least for certain types of claims—is the only way to harmonize RCW 10.73.090 and CR 15. CR 15(c), of course, permits amendment of pleadings even after the statute of limitations has passed if the amendment "relates back" to the time of filing.[5] CR 15 applies to civil cases in the superior court. CR 1. A PRP is a civil case.[6] Thus, CR 15 expressly applies to PRPs in the superior court.

The majority is correct that PRPs are usually commenced in the appellate court, not the superior court. But sometimes a PRP is commenced as a CrR 7.8 motion in superior court—and the Civil Rules would apply directly at that point. And sometimes, after filing, a PRP is referred to the superior court for a hearing. RAP 16.11(b). CR 15 would apply directly at that point, too. It would be the height of formalism—and exceedingly inefficient—to bar such amendments at a different and likely earlier time in the PRP proceeding, before a reference hearing

---

[5] *E.g., Kommavongsa v. Haskell*, 149 Wn.2d 288, 317, 67 P.3d 1068 (2003); *Beal v. City of Seattle*, 134 Wn.2d 769, 782, 954 P.2d 237 (1998); *Grant v. Morris*, 7 Wn. App. 134, 137, 498 P.2d 336 (1972).

[6] *Limstrom v. Ladenburg*, 136 Wn.2d 595, 607 n.5, 963 P.2d 869 (1998) ("personal restraint petition is a civil procedure"); *In re Pers. Restraint of Lord*, 123 Wn.2d 737, 739 n.2, 870 P.2d 964 (1994) (same).

(as the majority's holding does here). In the past, Washington courts have eschewed such formalism—they have applied CR 15 even by analogy, where the rule did not apply literally.[7]

*Pirtle, Vandervlugt, Bonds*, CR 15, RAP 18.8(a), and RAP 1.2(a) (requiring rule interpretation that furthers decisions "on the merits" rather than on procedural grounds) thus all weigh in favor of applying the ordinary civil amendment-of-pleadings rule to PRPs in the appellate court, just as that rule would apply to PRPs later referred to the Superior Court. To the extent *Benn* states that amendments beyond the statutory time limit are always impermissible, it conflicts with those authorities. Under the ordinary rules governing amendment of pleadings, the amendment in this case should have been considered.

In fact, the United States Supreme Court has come to a similar conclusion in the similar context of federal habeas corpus claims filed under 28 U.S.C. § 2254. Those postconviction challenges, like Washington PRPs, are subject to a strict one-year time bar. 28 U.S.C. § 2244(d)(1). But the federal courts, like Washington courts, consider habeas petitions to be civil cases, and the circuit courts of appeals thus have treated them as subject to the Federal Rules of Civil Procedure (Fed. R. Civ. P.), including Fed. R. Civ. P. 15, allowing amendment of pleadings. The Supreme Court, cognizant of the one-year time bar and of the unique nature of civil

---

[7] *See State v. Eppens*, 30 Wn. App. 119, 123, 633 P.2d 92 (1981) (permitting State to amend information after time limit had passed based "on the relation back doctrine, embodied in CR 15(c) and applicable to criminal cases").

habeas proceedings as an attack on a previously final judgment, nevertheless agreed that Fed. R. Civ. P. 15 applied to habeas proceedings. *Mayle v. Felix*, 545 U.S. 644, 664, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005). But it adopted a very strict limiting principle: amendments proposed after the statute of limitations has run will not be permitted unless they arise out of the same "'conduct, transaction, or occurrence'" as that identified in the original habeas petition. *Id.* at 656 (quoting Fed. R. Civ. P. 15(c)(2)). The Supreme Court noted that the circuit courts had been in conflict about what sorts of claims could "relate back" to a timely-filed habeas petition. *Id.* at 657. It rejected a broad construction of Fed. R. Civ. P. 15's phrase "conduct, transaction, or occurrence" that would have permitted belated amendments raising any claim attacking the final criminal judgment. *Id.* at 664. But it did not reject the application of Fed. R. Civ. P. 15 to habeas petitions completely. Instead, it ruled that the "conduct, transaction, or occurrence" to which the relation-back rule applied was the challenge raised in the original habeas petition, not the original criminal case. *Id.* at 660-61, 664. Under that extremely restrictive definition, the court barred an amendment based on a completely different claim than the one in the initial habeas petition. *Id.* at 660-61 (confrontation clause claim based on one set of statements does not arise from the same conduct, transaction, or occurrence as self-incrimination claim based on different statements).

Washington's CR 15 is essentially the same as Fed. R. Civ. P. 15. Washington's interest in finality, but also in fair and even-handed application of the CRs, is certainly as important as the federal interests identified in *Mayle*. But the majority adopts an interpretation of CR 15 that is far more restrictive than even the restrictive interpretation adopted by the Supreme Court in *Mayle*, and more restrictive than any of the circuits that construed tFed. R. Civ. P. 15 before *Mayle*. It offers no justification for such a nontextual reading of the rules.

To be sure, we can have a healthy debate in the future about which claims relate back and which claims do not here in Washington. But even under the most restrictive interpretation of CR 15(c)'s language—the one adopted by the Supreme Court—the appellate court in Mr. Haghighi's case should have addressed whether the claim of ineffective assistance of counsel for failure to preserve the "inevitable discovery" argument in this court (following the appellate court's affirmance on appeal) "relates back" to the initial filing of the PRP, with its ordinary, unadorned, "inevitable discovery" claim. Under CR 15(c), an amendment to a complaint relates back if "the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." If the amendment relates back to such conduct, it is irrelevant that the claim is based on a different theory.[8] "[T]he test for relation back . . . is . . . whether

---

[8] *Grant*, 7 Wn. App. at 137 ("'And an amendment which changes only the legal theory of the action . . . will relate back.'" (quoting 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE 15.15(3), at 1027 (2d ed. 1968))).

the defendant had notice of the lawsuit and accordingly was not prejudiced . . . ."[9] Here, the State had notice that the PRP petitioner's claims challenged not just his criminal conviction but, more importantly, the trial and appellate courts' embrace of the "inevitable discovery" exception to the exclusionary rule. The proposed amendment in this case—a challenge to the same criminal conviction implicating those same "inevitable discovery" holdings—therefore relates back to the initial filing of the PRP. "The judicial preference to allow amendments that relate back is consistent with the policy that a case should be decided on the merits." *Watson v. Emard*, 165 Wn. App. 691, 700, 267 P.3d 1048 (2011) (citing *Herron v. Tribune Publ'g Co.*, 108 Wn.2d 162, 167, 736 P.2d 249 (1987)).

The majority insists that even if ordinary civil relation-back rules applied to this civil case, an ineffective assistance of counsel claim based on counsel's failure to take a specific action does not relate back to the substantive claim of error upon which the ineffective assistance of counsel is based, because they are too different. Majority at 14-15. This assertion flatly contradicts our long history of characterizing an ineffective assistance of counsel claim based on a particular legal error as virtually identical to the substantive error itself, for the purpose of barring a petitioner's ability to raise the ineffective assistance of counsel claim on a PRP following rejection of

---

[9] *Kommavongsa*, 149 Wn.2d at 317; *see also Beal*, 134 Wn.2d at 782 ("The purpose of CR 15(c) . . . is to permit amendment provided the defendant is not prejudiced and has notice.").

the substantive claim on appeal.[10] If both claims are considered the same ground for relief in the latter context, they must certainly be considered the same—or nearly the same—ground for relief in the former context.

The ineffective assistance claim should therefore be decided on the merits. Petitioner argues that appellate defense counsel's failure to preserve the "inevitable discovery" issue on direct appeal by seeking review of that claim in this court constituted ineffective assistance. Whether that failure fell below the required objective standard of reasonableness, *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), is a difficult issue. On the one hand, appellate defense counsel's failure to anticipate changes in the law does not fall below the required objective standard of reasonableness.[11] On the other hand, appellate defense counsel does have a duty to provide effective assistance,[12] so the

---

[10] *E.g., In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671 & n.19, 101 P.3d 1 (2004) (defendant "'may not recast the same issue as an ineffective assistance claim; simply recasting an argument in that manner does not create a new ground for relief'" (quoting *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 720, 16 P.3d 1 (2001))).

[11] *Benn*, 134 Wn.2d at 939; *see also State v. Brown*, 159 Wn. App. 366, 372, 245 P.3d 776 (collecting cases), *review denied*, 171 Wn.2d 1025 (2011).

[12] *See Evitts v. Lucey*, 469 U.S. 387, 395-96, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985) (first appeal as of right not adjudicated in accord with due process if appellant lacks effective assistance of counsel, whether retained or appointed); *McCoy v. Court of Appeals*, 486 U.S. 429, 436, 108 S. Ct. 1895, 100 L. Ed. 2d 440 (19878); *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 814, 100 P.3d 291 (2004) (ineffective assistance for appellate defense counsel to fail to raise issue on appeal that would have resulted in new trial); *State v. Tomal*, 133 Wn.2d 985, 990-91, 948 P.2d 833 (1997).

failure to give correct advice about the advisability of an appeal does fall below the required objective standard of reasonableness.[13]

Where did appellate defense counsel's conduct fall on this spectrum? This depends in part on facts about what appellate counsel did and in part on facts about what he reasonably should have done during the relevant time period. *See Strickland*, 466 U.S. at 698 (claim of ineffective assistance is mixed question of fact and law); *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001). That is the proper subject of a RAP 16.11(b) reference hearing.[14]

I therefore dissent from the majority's decision to affirm the denial of petitioner's motion to amend his PRP. That decision should be reversed, and this PRP should be referred to the superior court for a hearing on the ineffective assistance claim that was the subject of the proposed amendment.

II. *Retroactivity*

---

[13] *See State v. Rolax*, 104 Wn.2d 129, 135, 702 P.2d 1185 (1985); *see also State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009) ("Reasonable conduct for an attorney includes carrying out the duty to research the relevant law.").

[14] Since ineffective assistance is a mixed question of fact and law, Washington courts admit expert testimony on that issue. *E.g.*, *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 264, 172 P.3d 335 (2007) (considering expert testimony proffered by petitioner Elmore on *Strickland* standard of care and ruling against Elmore on the merits). In fact this court has found expert testimony admissible and persuasive on an ineffective assistance issue. *Brett*, 142 Wn.2d at 876-80 (summarizing evidence); *id.* at 871 ("the reference hearing's expert legal testimony establishes that counsel, by failing to take any meaningful steps to develop the evidence available for use in Brett's defense, deprived Brett of effective counsel").

The majority also holds that the illegal search claim contained in the original, timely filed PRP cannot be decided on the merits because the dispositive case—*Winterstein*—was decided after Mr. Haghighi's appeal became final. The majority relies on *St. Pierre*'s 1992 adoption of the 1989 federal *Teague* case to govern this retroactivity analysis.

Whether *Teague* should still guide state court retroactivity analysis post-*Danforth* is another difficult question. In *St. Pierre*, we transitioned to the *Teague* analysis largely without comment. We did note, citing the earlier case *Sauve*, that "we have attempted from the outset to stay in step with the federal retroactivity analysis." *St. Pierre*, 118 Wn.2d at 324 (citing *In re Pers. Restraint of Sauve*, 103 Wn.2d 322, 326-28, 692 P.2d 818 (1985)). But the cited portion of *Sauve* merely describes and then follows the federal analysis without explanation of why it should be followed. State court decisions following *St. Pierre* continued to follow *Teague* but still lacked a full analysis of whether it advanced or impeded relevant state values.

In 2008, however, the United States Supreme Court made clear, for the first time, that the federal judge-made *Teague* rule does not consider state interests for and against retroactivity and, hence, that *Teague* does not control this court's retroactivity analysis. *Danforth*, 552 U.S. at 282.

This court has not had an opportunity since *Danforth* was decided to consider whether the values informing our retroactivity analysis are the same as the

values animating *Teague*. The majority suggests that those values are identical, so no further analysis is needed: "no explanation is offered [by petitioner] as to why our state would favor finality of judgments to a lesser extent than the federal system. Thus, we see no reason to depart from our established retroactivity analysis." Majority at 11.

The majority is correct that our state values finality, just as the federal courts do. But the majority is incorrect to imply that finality is the only value at stake here in state court. In any criminal appeal or postconviction proceeding, there are at least two competing values: the value of finality, on the one hand, and the value of error correction, on the other hand. *Teague* places tight limits on postconviction review in large part out of respect for the state courts' ability, and duty, to do their own error correction. *Teague*'s federalism-based concerns, which caused it to tip the balance in favor of finality and against error correction, do not have the same weight where, as here, a state court is reviewing state convictions and trying to do the error correction that *Teague* expects of state courts.[15] In fact where, as here, a state constitutional right is at stake, the state court is the only one that can perform the error correction function: federal courts do not reach state constitutional claims at all.

---

[15] *See Harrington v. Richter*, 562 U.S. \_\_\_, 131 S. Ct. 770, 778, 178 L. Ed. 2d 624 (2011) ("state courts are the principal forum for asserting constitutional challenges to state convictions").

*St. Pierre* imported *Teague* into Washington law without discussing these policy concerns. The majority does not discuss them here. That is certainly understandable, since Mr. Haghighi provided only limited discussion about which of many possible retroactivity tests would best further our state's values, why any one of them should be adopted, and whether the suggested test would dictate a different outcome here.[16]

Our research reveals numerous possible non-*Teague* tests. Some might weigh against retroactivity in this situation. For example, many of the state courts rejecting *Teague* have stuck with the earlier federal test from *Linkletter v. Walker*, 381 U.S. 618, 85 S. Ct. 1731, 14 L. Ed. 2d 601 (1965).[17] Courts often interpret the

---

[16] Mr. Haghighi's initial appellate court brief asked that court to abandon *Teague* in the "interests of justice." Br. of Pet'r at 15, *In re Pers. Restraint of Haghighi* (Wash. Ct. App. No. 631307-I (2011)). His reply brief in the appellate court cited numerous out-of-state cases rejecting *Teague*, but provided no specific alternative. Court of Appeals Reply Br. of Pet'r at 4, *In re Haghighi* (Wash. Ct. App. No. 631307-I (2011)). The petitioner's supplemental brief in this court does not urge adoption of a specific test either, but it points to one developed in the context of purely civil matters that places no weight at all on concerns unique to criminal cases (for example, the importance of finality in the criminal context not just to crime victims but also to the need for effective consequences, the concerns about placing special emphasis on the guilt-innocence determination, or the value of deterring official misconduct). Suppl. Br. of Pet'r at 13-14 (citing *Lunsford v. Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 271-73, 208 P.3d 1092 (2009)).

[17] *E.g., State v. Whitfield*, 107 S.W.3d 253 (Mo. 2003); *State v. Nakata*, 76 Haw. 360, 378, 878 P.2d 699 (1994); *Cowell v. Leapley*, 458 N.W.2d 514 (S.D. 1990); *see also Ex parte Coker*, 575 So. 2d 43, 51-52 (Ala. 1990); *Moen v. Peterson*, 104 Or. App. 481, 483 n.1, 802 P.2d 76 (1990); *People v. Carrera*, 49 Cal. 3d 291, 326-28, 777 P.2d 121, 261 Cal. Rptr. 348 (1989); *State v. Lark*, 117 N.J. 331, 339-40, 567 A.2d 197 (1989).

*Linkletter* test as favoring retroactivity of new rules tending to strengthen the reliability of the guilt-innocence determination[18] over new rules aimed at deterring official misconduct. For example, the New York Supreme Court (trial level court) just issued a decision declining to apply the United States Supreme Court's holding regarding ineffective assistance in *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), retroactively because of the *Linkletter* test: "New York . . . has continued to rely on the [*Linkletter*] criteria, even post-*Teague*." *People v. Marshall*, No. 3018/1995 2013 WL 1729392, at *2 (N.Y. Sup. Ct. Apr. 19, 2013).[19] Other possible retroactivity tests place great weight on the integrity of the proceedings. *E.g., Griffith v. Kentucky*, 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987) (applying *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), barring systematic use of peremptory challenges to exclude jurors on account of their race, retroactively). At least one state asks mainly whether, under a state analysis, the new decision constitutes a "clear break" from past precedent. *Denisyuk v. State*, 422 Md. 462, 478, 30 A.3d 914 (2011) (quoting

---

[18] *See, e.g., United States v. Williams*, 615 F.2d 585, 592-93 (3d Cir. 1980); *Sauve*, 103 Wn.2d at 327-28 (noting consideration of the "truth-finding function" in *Linkletter/Stovall v. Denno*, 388 U.S. 293, 296-300, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967) retroactivity analysis).

[19] Although this case is unpublished, under New York law, "unpublished decisions may still be considered as persuasive authority." *Yellow Book of N.Y. LP v. Dimilia*, 188 Misc. 2d 489, 489, 729 N.Y.S.2d 286 (Dist. Ct. 2001). While there is no rule that bars this court's opinions from citing any authority, we permit parties to cite unpublished cases "if citation to that opinion is permitted under the law of the jurisdiction of the issuing court." GR 14.1.

*Potts v. State*, 300 Md. 567, 577, 479 A.2d 1335 (1984)). If not, it applies to earlier cases. Using this analysis, the Maryland Court of Appeals held that *Padilla* was not a clear break so "under Maryland retroactivity jurisprudence, *Padilla* is retroactively applicable." *Denisyuk*, 422 Md. at 482. The court clarified that "Maryland has not adopted *Teague*, nor must it." *Id.* at 480 n.8.

The majority does not discuss which one of these or other possible tests[20] best serves our own state values of finality and error correction, of reliability and integrity, of factual accuracy and procedural fairness. That means that this remains an open question that we will have to answer, post-*Danforth*, in the appropriate case.

For the reasons given above, I dissent from the decision to affirm denial of the motion to amend the PRP. I concur in the majority's conclusion about nonretroactivity.

---

[20] Other retroactivity tests are possible, too. *See* Christopher N. Lasch, *The Future of* Teague *Retroactivity, or "Redressability," after* Danforth v. Minnesota: *Why Lower Courts Should Give Retroactive Effect to New Constitutional Rules of Criminal Procedure in Postconviction Proceedings*, 46 AM. CRIM. L. REV. 1, 60 (2009) (suggesting that benefits of complete retroactivity on collateral review outweigh finality concerns).

Gordon McCloud, J.

Stephens, J.

Wiggins, J.