[No. 44674.   En Banc.   June 2, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. EDWARD JOSEPH SMITH, JR., *Appellant.*

640

*Thomas A. Cowan,* for appellant.

*C. J. Rabideau, Prosecuting Attorney,* for respondent.

*James E. Sedney* and *Richard Emery* on behalf of Institutional Legal Services, amici curiae.

HOROWITZ, J.—Defendant appeals a judgment of acquittal and order of commitment entered by the Superior Court after a jury found defendant not guilty by reason of insanity. We accepted certification from the Court of Appeals, Division Three.

On October 13, 1973, defendant was on board an eastbound Amtrak passenger train traveling through Franklin County in Eastern Washington. It had left Seattle earlier that day. According to defendant an elderly woman sitting near him was invading his privacy by using "ESP" and attempting to kidnap him. As a result, defendant forced the woman to the aisle floor and threatened her with the pool cue he was carrying. When three train employees rushed into the car to quell the fracas, defendant beat the woman about the head and arms until he was subdued. He was transferred to Franklin County jail by a deputy sheriff after the train made a special stop in Kahlotus, Washington.

Defendant was charged by information with second-degree assault while armed with a deadly weapon. RCW 9.11.020(4) (since replaced by RCW 9A.36.020(c)); RCW 9.95.040. He apparently pleaded not guilty by reason of insanity on advice of his court appointed attorney. On December 14, 1973, defendant's attorney filed a notice of intent to rely on the insanity defense.

After defendant was found incompetent to stand trial in December 1973, March 1974 and July 1974, the parties stipulated to his competence shortly before July 29, 1975, because of letters to that effect from doctors at Eastern State Hospital. At trial the Superior Court judge, in view of the record, refused to permit defendant to withdraw the not guilty by insanity plea. Defendant and his attorney wanted to proceed only on a not guilty plea because defendant did not want to return to Eastern State Hospital. In partial satisfaction of defendant's request, the judge permitted the case to proceed on both the not guilty and

the insanity plea. The jury found defendant not guilty by reason of insanity.

Defendant on appeal makes three basic contentions: (1) the trial judge erred in not permitting withdrawal of the insanity plea; (2) the jury lacked sufficient evidence to determine if defendant would be dangerous if at large after the insanity acquittal; and (3) he was held beyond the maximum period allowed under RCW 10.77.090 to determine competency. We disagree and affirm his insanity acquittal. We will consider these issues in the order stated.

### 1. Imposition of the insanity defense.

█ We first point out the original not guilty by insanity plea was invalid. Defendant was not found competent until immediately before the trial July 29, 1975. The record indicates, and both parties expressly agree, defendant was incompetent when the original plea was entered. As stated in *State v. Walker,* 13 Wn. App. 545, 555, 536 P.2d 657 (1975) (quoted with approval in *State v. Coville,* 88 Wn.2d 43, 46, 558 P.2d 1346 (1977)): "[i]nherent within this determination that an accused . . . is not competent to stand trial is a tacit finding that the accused . . . cannot rationally enter or waive a plea of not guilty be reason of insanity." Other courts have similarly held that an incompetent defendant cannot enter a plea. *See, e.g., White v. United States,* 470 F.2d 727, 728 (5th Cir. 1972); *Forthoffer v. Swope,* 103 F.2d 707, 709 (9th Cir. 1939); *Johnson v. Wyrick,* 381 F. Supp. 747, 758 (W.D. Mo. 1974), *aff'd,* 508 F.2d 123 (8th Cir. 1974); *State v. English,* 198 Kan. 196, 424 P.2d 601 (1967); *Van Dusen v. State,* 197 Kan. 718, 421 P.2d 197 (1966). Nor may the defense of incompetency be waived by the incompetent (*Pate v. Robinson,* 383 U.S. 375, 384, 15 L. Ed. 2d 815, 86 S. Ct. 836 (1966)) or by his counsel. *Kibert v. Peyton,* 383 F.2d 566, 569 (4th Cir. 1967); *In re Davis,* 8 Cal. 3d 798, 808, 505 P.2d 1018, 106 Cal. Rptr. 178 (1973).

█ Although the original plea was not valid, the judge had inherent power to impose the insanity defense sua

sponte over objection of defendant and his counsel. The trial judge was faced with a dilemma. On the one hand he could not take unwarranted liberties with the manner in which a competent defendant chose to conduct his defense, including his choice of plea. We have recognized that when a defendant, after being apprized of the consequences of his act, knowingly refuses to enter an insanity plea, the trial judge does not abuse his discretion in permitting the case to proceed on the not guilty plea alone. *State v. Johnston,* 84 Wn.2d 572, 577, 527 P.2d 1310 (1974).

On the other hand, the trial judge has a duty to uphold the constitution of this state and of the United States, and to discharge the duties of judge to the best of his ability. *See* Const. art. 4, § 28; RCW 2.08.080. It would clearly be unconstitutional to permit the conviction of a defendant who was legally insane at the time of the commission of the crime. *State v.'Strasburg,* 60 Wash. 106, 110 P. 1020 (1910). Given these competing interests, the trial court was correct in choosing the course which would uphold the constitution and fulfill his obligation. The trial judge himself recognized he "would be remiss in [his] duty" if he had not required the insanity defense.

As the United States Court of Appeals, District of Columbia Circuit explained:

> One of the major foundations for the structure of the criminal law is the concept of responsibility, and the law is clear that one whose acts would otherwise be criminal has committed no crime at all if because of . . . mental condition he is not responsible for those acts. . . .
>
> In the courtroom confrontations between the individual and society the trial judge must uphold this structural foundation by refusing to allow the conviction of an obviously mentally irresponsible defendant, and when there is sufficient question as to a defendant's mental responsibility at the time of the crime, that issue must become part of the case.

*Whalem v. United States,* 346 F.2d 812, 818 (D.C. Cir. 1965), *cert. denied,* 382 U.S. 862, 15 L. Ed. 2d 100, 86 S. Ct. 124 (1965). *Accord, United States v. Wright,* 511 F.2d 1311

(D.C. Cir. 1975); *United States v. David*, 511 F.2d 355 (D.C. Cir. 1975); *Bethea v. United States*, 365 A.2d 64, 91 n.59 (D.C. App. 1976); *State v. Pautz*, 299 Minn. 113, 117, 217 N.W.2d 190 (1974).

Indeed, this court long ago recognized this function of the trial judge when it held a judge possessed the inherent power to inquire into a defendant's competence to stand trial in the absence of any statutory authority so to do. *State ex rel. Mackintosh v. Superior Court*, 45 Wash. 248, 88 P. 207 (1907). This use of inherent power was noted approvingly in *State v. Tate*, 74 Wn.2d 261, 263, 444 P.2d 150 (1968). The *ABA Standards Relating to the Function of the Trial Judge* § 1.1(a), at 7 (Approved Draft, 1972) also emphasize the trial judge's obligation to raise on his own initiative "matters which may significantly promote a just determination of the trial." *See generally* A. Gitelson & B. Gitelson, *A Trial Judge's Credo Must Include His Affirmative Duty to be an Instrumentality of Justice*, 7 Santa Clara Lawyer 7 (1966).

The facts here show the trial judge was justified in using this inherent power. The initial insanity plea, though invalid, brought the matter of defendant's insanity to his attention. The judge had before him defendant's testimony at the July 1974 incompetency hearing, where he gave his explanation of the incident. Defendant said he knew the victim was using "ESP" to read his mind because a passenger he had been thinking of looked at him and because at dinner the green peas did not have skins. He also thought she was kidnapping him because when he awoke from a 15-minute nap, the moon was on the opposite side of the train, indicating to defendant the victim had turned the train around while he slept. Under these delusions, to which doctors testified he was subject, defendant attacked the victim. In addition to defendant's testimony and doctors' reports, the three railroad employees who witnessed the beating testified defendant condemned the victim for her "ESP" when he began his attack. One employee further testified to the wild stare in defendant's eyes and his

abnormal appearance. The jury confirmed the wisdom of the judge's decision to impose the insanity defense by finding defendant not guilty by reason of insanity, although they could have found him simply not guilty. Moreover, there was expert testimony at trial defendant was insane at the time of the crime, and defendant does not challenge the jury's findings that he committed the criminal act or that he was insane at the time of the crime. .

Imposition of the insanity plea did not prejudice defendant's defense on the merits. He had the opportunity to show he did not commit the act. Not only was the not guilty plea submitted to the jury, but before it could find defendant not guilty by reason of insanity, the jury first had to find that he committed the act charged. RCW 10.77.040. In addition, defendant had no viable defense on the merits. He admitted committing the act at the July 1974 incompetency hearing and that admission was supported by the testimony of three independent eyewitnesses. His only defense was the invasion of privacy and kidnapping claims, useful only in revealing the defense of insanity. *See United States v. Ashe,* 427 F.2d 626 (D.C. Cir. 1970); *Patton v. United States,* 403 F.2d 923 (D.C. Cir. 1968).[1]

2. Sufficiency of the evidence to support answers to questions 3, 4 and 5 of Verdict Form C.

■ Verdict Form C is taken directly from RCW 10.77-.040, which requires the jury to answer the following questions in considering whether or not a defendant should be acquitted by reason of insanity:

1. Did the defendant commit the act charged?
2. If your answer to number 1 is yes, do you acquit him because of insanity existing at the time of the act charged?

---

[1] It is also contended that defendant has a constitutional right to a bifurcated trial on the issues of guilt and insanity. However, since only amicus curiae and not appellant argue this point, we need not consider it. *Long v. Odell,* 60 Wn.2d 151, 154, 372 P.2d 548 (1962); *Walker v. Wiley,* 177 Wash. 483, 491, 32 P.2d 1062 (1934).

3. If your answer to number 2 is yes, is the defendant a substantial danger to other persons unless kept under further control by the court or other persons or institutions?

4. If your answer to number 2 is yes, does the defendant present a substantial likelihood of committing felonious acts jeopardizing public safety or security unless kept under further control by the court or other persons or institutions?

5. If your answers to either number 3 or number 4 is yes, is it in the best interests of the defendant and others that the defendant be placed in treatment that is less restrictive than detention in a state mental hospital?

The jury answered "yes" to the first four questions and "no" to the last question.

Defendant asserts questions three through five should not have been submitted to the jury because there was insufficient evidence to support them. Defendant's contention must fail for two reasons. First, we need not consider this assignment of error because the instruction was not set out verbatim in appellant's brief as required by ROA I-43.[2]

Secondly, there was adequate evidence to support the jury's answers. Dr. Jerzy Slobodow, a licensed psychiatrist, testified defendant was hostile, argumentative and resistive. Defendant demanded special privileges and refused routine laboratory tests. Dr. Slobodow also testified defendant had very poor insight into his condition, was divorced from reality and thought other people were after him. The doctor diagnosed defendant as a paranoid type of psychotic, and based on the above symptoms and defendant's explanation of the incident on the train, concluded defendant could not distinguish between right and wrong.

Dr. Slobodow determined, based on three meetings with defendant, that this was defendant's condition at the time of the criminal act. After the third meeting the doctor noted defendant's condition was unchanged, found defendant unsafe to be at large, and diagnosed his condition as

---

[2]The old rules on appeal apply to this case because the appeal was pending before July 1, 1976. RAP 18.22.

"chronic." Dr. Slobodow also testified that although medication might make a patient such as defendant less hostile, he would return to his former condition if medication ceased.

Dr. Phillip Westling testified similarly concerning defendant's paranoia and hostility, and mentioned a specific incident when defendant physically threatened him. Not only did Dr. Westling agree with Dr. Slobodow that defendant would return to a hostile state if off medication, but testified defendant had in fact refused medication shortly before the trial.

The violent nature of the crime itself is also a factor in determining if defendant is dangerous. *State ex rel. Thompson v. Snell,* 46 Wash. 327, 333, 89 P. 931 (1907).

Defendant challenges Dr. Westling's qualifications as an expert witness because he has no degree in psychiatry or psychology. Dr. Westling received his M.D. from the University of Oregon in 1949 and by the time of the trial had worked at Eastern State Hospital 5 1/2 years. For four of those years he had performed mental status examinations (psychiatric and medical), designed treatment plans and prescribed anti–psychotic medication. Practical experience in a given area can qualify a witness as an expert. *See, e.g., State v. J–R Distribs., Inc.,* 82 Wn.2d 584, 597, 512 P.2d 1049 (1973), *cert. denied,* 418 U.S. 949, 41 L. Ed. 2d 1166, 94 S. Ct. 3217 (1974); *State v. Jacobsen,* 78 Wn.2d 491, 497, 477 P.2d 1 (1970). Determination of whether or not a witness possesses the special skill or knowledge necessary to qualify as an expert witness is discretionary with the trial judge *(State v. J–R Distribs., Inc., supra)* and there was no abuse of discretion here.

### 3. Holding period for competency evaluation.

Defendant finally asserts he was held beyond the maximum period allowed for determination of competency under RCW 10.77.090, and accordingly charges against him must be dismissed.

RCW 10.77.090 provides for a maximum of two 90–day periods and one 6–month period. The first 90–day period begins when "the court finds . . . the defendant is incompetent . . ." The court so found on December 20, 1973, and defendant was duly committed for 90 days. Defendant was found incompetent at the hearing required at the end of this period, and committed for the second 90 days beginning March 19, 1974.

At the end of the second 90–day period there was an incompetency hearing before a jury on July 16 and 17, 1974. Although there was a short delay between the end of the second 90–day period and the hearing, neither defendant nor his counsel objected to the delay, and RCW 10.77-.090 provides for dismissal only at the end of the 6–month period. The jury found defendant incompetent and because they also determined (in addition to other statutorily required findings) there was "a substantial probability that the defendant will regain competency within a reasonable period of time" (RCW 10.77.090(3)), defendant was committed for the final 6–month period.

■ The record appears to show that the 6–month period began July 19, 1974, the date of the commitment order, and ended shortly before trial, which began July 29, 1975. Although the latter period is slightly over 1 year, the Superior Court did not have control over defendant from August 8, 1974, when defendant appealed the July 19, 1974, incompetency finding, until February 7, 1975, when the Court of Appeals dismissed the appeal pursuant to defense motion. This means defendant was held under control of the Superior Court only a maximum of 10 days in excess of the 6–month period. He was found competent and tried 10 days after the 6–month period ended. There is no evidence, nor does defendant claim, the short delay prejudiced his case. In view of the fact defendant's rights were not prejudiced and the essential purpose of determining competency was fulfilled, we find the Superior Court substantially complied with RCW 10.77.090. *See Kansas City v. Board of County Comm'rs*, 213 Kan. 777, 518 P.2d 403 (1974).

We have considered defendant's other contentions and find them to be without merit.

The judgment and order are affirmed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, and HICKS, JJ., concur.