[No. 7782-1-I.   Division One.   December 17, 1980.]

THE STATE OF WASHINGTON, *Respondent*, v. KERRY
DEAN SERGENT, *Appellant*.

*William Jaquette,* for appellant (appointed counsel for
appeal).

*Norm Maleng, Prosecuting Attorney,* and *Lee D. Yates,
Deputy,* for respondent.

DORE, J.—Defendant appeals from his conviction of
murder in the second degree. We reverse and remand for a
new trial.

## ISSUE
Was defendant's February 15 confession voluntary?

FACTS

The victim and her son, the defendant, lived together. The victim's neighbors became concerned on November 27, 1978, when the victim failed to report for work and could not be located throughout the day. Police responded to a call from the neighbors. Before entering the house, police observed blood inside a van parked in the victim's carport and blood on the doorknob of the door between the house and the carport. The police entered the home and saw blood smeared on the walls and spattered on the floors. They followed the blood stains to the basement, where they found defendant cowering in a bathroom, a gun in one hand and a boot in the other. Defendant surrendered without resistance.

Defendant's clothes were stained with blood. He said that the blood in the kitchen was probably from a chicken which he believed his mother had slaughtered. Defendant was arrested. When interviewed by the police, defendant stated he did not know the whereabouts of his mother, but assumed from the blood in the kitchen that she had been killed. He felt that the CIA may have been involved.

Additional circumstantial evidence linked defendant with the crime. Defendant was charged with second degree murder. The State's charge against defendant was amended to first degree murder.

On January 19, defendant was found incompetent to stand trial and was taken to Western State Hospital. While at Western, defendant was administered haloperidol (which reduces delusions and hallucinations of one suffering from schizophrenia) and cogetin (which controls undesirable physical side effects of the haloperidol).

On February 15, the defendant telephoned the prosecuting attorney from Western State Hospital. He expressed a desire to enter a plea of guilty to second degree murder. The prosecutor called a Sergeant Hicks who spoke to the defendant by telephone from the prosecutor's office and later from his own office. Hicks advised defendant of his

*Miranda* rights and then taped the interview, with defendant's permission. The defendant confessed to stabbing his mother and removing her body to a remote place. The recorded confession was admitted at the trial as an exhibit. Throughout the interview, the defendant breathed heavily and panted. Defendant continually asked the detective when he would be picked up and taken to the jail and, inferentially, away from the mental hospital.

The court held the February 15 statement admissible at a CrR 3.5 hearing. The defendant waived his right to a jury trial. Dual pleas of not guilty and not guilty by virtue of insanity[1] were entered. The court found the defendant was not insane at the time of the crime. Defendant was found guilty of murder in the second degree.

## DECISION

ISSUE: February 15 statement was involuntary.

A confession must be made freely and without inducement or compulsion before it may be admitted as evidence against the defendant. *Haynes v. Washington,* 373 U.S. 503, 10 L. Ed. 2d 513, 83 S. Ct. 1336 (1963). A court will look to a totality of the circumstances to determine whether a confession was made voluntarily. *Fikes v. Alabama,* 352 U.S. 191, 1 L. Ed. 2d 246, 77 S. Ct. 281 (1957).

An examination of all the circumstances surrounding the February 15 statement convinces us that the confession was involuntary. At the time the statement was given the defendant was taking large doses of an antipsychotic medication. A clinical psychologist on the staff at Western State Hospital testified that the transcript of the confession indicated defendant was exhibiting symptoms of schizophrenia when he made the statement. There was ample evidence that defendant had a strong negative reaction to the drugs, and repeatedly asked to be taken off of them.

---

[1] *See State v. Smith,* 88 Wn.2d 639, 564 P.2d 1154 (1977).

Further, defendant was incompetent to stand trial at the time that he gave the statement on February 15. Defendant was found competent to stand trial 2 months later, on April 27. Subsequent to that time, however, he was returned to Western State, but again was found competent to stand trial on May 7.

The taped "confession" discloses defendant's motive for making the confession. Defendant believed that if he confessed to the crime, he would be transferred to the jail and away from Western State, thereby escaping the prescribed medications. A psychiatrist at Western State testified that a few days before February 15, defendant stated his intention to put this plan into effect. During the taking of the statement, defendant interrupted the detective a number of times to ask when someone would be coming to take him away from Western State.

We further note that defendant's telephone call was in the nature of a plea bargain. He hoped that if he confessed he would have the charge reduced to second degree murder. He was never promised a reduction in charge. At the start of the interview, however, defendant explained that his understanding of the difference between the two degrees were that, "Well, first degree is premeditated. Second degree is spur of the moment." Detective Hicks responded, "Okay. And you're telling me that what happened between you and your mother was not premeditation?" to which defendant answered "True." This interchange took place before Hicks informed defendant of his *Miranda*[2] rights. When the conversation focused on the day of the murder, the following took place:

| DEFENDANT: | This will be second degree won't it? |
| HICKS: | Well, you told me you understood what the degrees were. And if it's not pre–meditated, then it would be classified as second degree— |
| DEFENDANT: | What's that? |

[2]*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

HICKS: You know, if it's not pre–meditated, then it probably would be classified as second degree. You know that better than I do, because I don't know what you're going to tell me.

DEFENDANT: Okay, after I woke up, I killed her, okay?

HICKS: Well, how did that happen?

DEFENDANT: It was just spur of the moment, like you said.

Defendant's attorney was not notified of his client's intention to make a confession, nor was defendant's attorney notified by the prosecutor of defendant's telephone call or of the follow–up call by Hicks until after those calls took place.

The taking of drugs by the defendant does not by itself render the confession involuntary. *State v. Lewis,* 19 Wn. App. 35, 573 P.2d 1347 (1978). Nor does defendant's incompetency to stand trial make him incompetent to waive his constitutional rights to counsel and to remain silent. *State v. McDonald,* 89 Wn.2d 256, 571 P.2d 930 (1977). We must look, however, to the entire situation surrounding the giving of the statement. The combination of the defendant's incompetency, his mental illness, the medication he was taking and his adverse reaction to those drugs, his attempt at plea bargaining and his waiver of fundamental constitutional rights without the assistance of his attorney, compel us to find that his statement to Detective Hicks was involuntary. The defendant's responses to Hicks' highly suggestive and leading questions were principally "yes" or "no." No narrative summary of facts on defendant's part was ever secured.

The State asserts that even if the confession should have been excluded from evidence, the error was harmless. We do not agree. The United States Supreme Court has stated "that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967). In other words, the appellate

court must determine whether the erroneously admitted evidence became part of the adjudication of guilt.

In the case before us, the confession played a crucial role in the second degree murder conviction. The court stated in its oral opinion:

> Now, the doctors tend to discount the so–called confession. The Court may well understand the reason for that. As the doctors indicate, the defendant has indicated the motivation for that too—that was a means of leaving Western State, being placed in jail. He would not be required to take his medicine. That's understandable.
>
> Yet on *close examination of the transcript* of the statement, it indicates that there are some facts there that it appears were unknown to anyone, other than the person who may have been involved.
>
> On the basis of *all of the evidence,* the Court is of the opinion that the defendant is guilty of murder in the second degree.

(Italics ours.) We cannot say that the introduction of the confession into evidence was harmless beyond a reasonable doubt.

Reverse and remand for a new trial. On retrial, the February 15 statement shall be excluded.

CALLOW, C.J., and JAMES, J., concur.

Reconsideration denied January 19, 1981.

Review denied by Supreme Court March 13, 1981.