IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68168-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| WILLIAM HALL CARNEY, | ) | |
| | ) | |
| Appellant. | ) | FILED: December 16, 2013 |

SCHINDLER, J. — William Hall Carney contends that under State v. Jones, 99 Wn.2d 735, 664 P.2d 1216 (1983), he is entitled to dismissal of the 1982 conviction of arson in the first degree, the acquittal by reason of insanity and order of civil commitment, and the 2011 order revoking his conditional release. Because Jones does not apply retroactively, we affirm the decision to dismiss Carney's collateral attack of the 1982 conviction and order of commitment, and the 2011 order revoking his conditional release.

FACTS

On March 31, 1982, police responded to a report of a disturbance at the apartment of William Hall Carney. Carney had barricaded himself inside and was fanning the flames of a fire in the apartment. Fire investigators concluded the fire was deliberately set by using a match to ignite combustible material in the apartment.

On April 1, 1982, the State charged Carney with arson in the first degree. On April 5, the court entered a 15-day order of commitment to the Department of Social and Health Services (DSHS) at Western State Hospital (WSH) to evaluate Carney and determine whether he was competent to stand trial. On April 23, a WSH psychologist reported Carney was "psychotic," "responding to auditory hallucinations," and not competent to stand trial. The court granted the request for a 90-day extension of the commitment.

On May 19, the WSH psychiatrist filed a report with the court stating that Carney had "slowly improved" with treatment and was competent to stand trial. The psychiatrist states Carney's paranoid schizophrenia is "now in fair remission."

> [W]ith treatment Mr. Carney's condition has slowly improved and he is now more cooperative, coherent and rational. He has a lengthy history of psychiatric treatment at numerous mental facilities. Our diagnostic impression continues to be Schizophrenia, chronic, paranoid type now in fair remission.
> It is our opinion that Mr. Carney has regained competency to stand trial. He now fully understands the nature of the proceedings against him and is able to assist his attorney in preparing a defense.

On June 4, the court found Carney competent to stand trial. Following arraignment on the charge of arson in the first degree, Carney entered a plea of not guilty.

At the beginning of the jury trial on July 2, the State asked the court to enter a plea of not guilty by reason of insanity on behalf of Carney. Carney did not object. The court granted the motion.

The State called a number of witnesses to testify at trial, including police officers and two psychiatrists. At the conclusion of the State's case, the defense moved to withdraw the plea of not guilty by reason of insanity. The court denied the motion. Carney testified in his defense.

In answer to a special verdict form, the jury found Carney committed the crime of arson in the first degree but found him "not guilty because of insanity existing at the time of the act charged." The jury also found Carney was "a substantial danger to other persons" and "present[ed] a substantial likelihood of committing felonious acts jeopardizing public safety or security unless kept under further control by the court or other persons or institutions."

At the sentencing on July 9, the court entered an order of acquittal by reason of insanity and an order of commitment. The findings state that when Carney committed the crime of arson in the first degree, he "was affected by mental disease or defect to such an extent that he was unable to perceive the nature and quality of the act with which he is charged and unable to tell right from wrong." The findings also state that Carney "is a substantial danger to other persons" and presented a substantial likelihood of committing acts jeopardizing public safety. The order of commitment remands Carney "to the custody of [DSHS] for hospitalization at such place as shall be designated for the care and treatment of the criminally insane."

The court advised Carney that he had the right to appeal the order of acquittal by reason of insanity and order of commitment. Carney signed and acknowledged receipt of the "Certificate of Compliance with Rule 7.1(b) CrR Rule for Superior Court." The certificate states that unless a written notice of appeal is filed within 30 days of entry of

3

the order of acquittal and commitment, "the right of appeal is irrevocably waived."

Carney did not file an appeal.

On November 17, 1987, the court entered an order of conditional release of

Carney to the community. His conditional release was subject to a number of

conditions. While on conditional release, Carney was hospitalized a number of times

"for inpatient treatment following episodes of psychiatric decompensation."[1]

In June 2005, Carney was hospitalized again after he "stopped taking his

medication and his behavior deteriorated rapidly." Following inpatient treatment, WSH

discharged Carney on September 11, 2007 to the Maple Creek Residential Facility.

The court entered an order modifying the conditions of release. The order required

Carney to follow the treatment plan, attend therapy sessions, remain in remission, and

maintain good conduct in the community.

In March 2011, WSH submitted a report to the court addressing adherence to the

terms and conditions of conditional release. The report states that the Maple Creek

Residential Facility continued to provide the necessary level of care and Carney

appeared to be "at his baseline level of stability." However, the report also describes

concerns expressed by Maple Creek Residential Facility staff about Carney's behavior

and hygiene. According to staff, Carney believed his food was being poisoned, and

insisted on "taking many books, papers and reading materials with him wherever he

goes, fearing 'they will be stolen' if left in his room."

---

[1] "Decompensation" means "loss of adequate functional power." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 587 (2002).

On June 3, 2011, the Secret Service investigated telephone calls Carney made from the Maple Creek Residential Facility to the White House. Carney made six telephone calls to the White House to schedule a meeting with the President of the United States. When White House staff refused to schedule a meeting, Carney said that he was putting the staff person on his "list."

On June 15, the Maple Creek Residential Facility provided a 30-day eviction notice to Carney and DSHS. On July 11, Carney met with his community program therapist and the community program director. Carney "presented as disheveled, poor hygiene, food and stains on his clothes, odor coming from his body, and his hair was not groomed." Carney insisted he "does not have to move out of his current residence although an eviction notice was given to him . . . , and believes that the director of his current residence is against him." In the report to the court, the therapist and the community program manager state that Carney was "showing signs of decompensation" and "appears to have difficulty holding a reality-based conversation at this time."

On July 27, the WSH Risk Review Board recommended revocation of Carney's conditional release. The report states Carney suffers from "Schizoaffective Disorder" and moderate to severe chronic mental illness. The report identifies a number of risk factors, including Carney's refusal to take his medication, deteriorating and threatening behavior, and paranoia. The State filed a motion to revoke the order of conditional release.

The court scheduled a revocation hearing for September 9. Carney filed a motion to dismiss. Carney argued the court did not have jurisdiction to enter an order revoking the conditional release. Carney relied on State v. Jones, 99 Wn.2d 735, 664

5

P.2d 1216 (1983), to argue the 1982 conviction and verdict of not guilty by reason of insanity violated his constitutional rights.

The court denied the motion to dismiss. The court ruled Carney's collateral attack of his 1982 conviction, acquittal by reason of insanity, and order of commitment was time barred. The court found Carney violated the conditions of release, entered an order revoking conditional release, and remanded Carney to DSHS to inpatient treatment. Carney appeals.

ANALYSIS

Time Bar

Carney contends the court erred in ruling his collateral attack was time barred because he did not receive notice of the statutory one-year time limit. Whether the statutory one-year time bar applies is a question of law that we review de novo. State v. Schwab, 141 Wn. App. 85, 91, 167 P.3d 1225 (2007).

On July 6, 1982, the jury found Carney committed the crime of arson in the first degree but was not guilty by reason of insanity. The court entered the order of acquittal by reason of insanity and order of commitment on July 9, 1982.

In 1989, the legislature enacted RCW 10.73.090. LAWS OF 1989, ch. 395, § 1. RCW 10.73.090 imposes a one-year time bar on a collateral attack. Under RCW 10.73.090, a defendant must file a collateral attack within one year of the judgment and sentence becoming final, and the court must advise the defendant of the one-year time bar at sentencing. RCW 10.73.110.

Under RCW 10.73.130, the one-year time bar applies only to a collateral attack filed more than one year after July 23, 1989. RCW 10.73.120 requires the Department of Corrections to "attempt to advise" those who, on July 23, 1989, were "serving a term of incarceration, probation, parole, or community supervision," of the new statutory time limit to file a collateral attack.

In In re Pers. Restraint of Bratz, 101 Wn. App. 662, 5 P.3d 759 (2000), we held the notification provision under RCW 10.73.120 violated equal protection as applied to defendants committed following an acquittal by reason of insanity. Bratz, 101 Wn. App. at 669-70. We adhere to Bratz and hold the court erred in ruling Carney's collateral attack of the 1982 acquittal and commitment was time barred. See also In re Pers. Restraint of Schwab, 141 Wn. App. 85, 92, 167 P.3d 1225 (2007) (deeming petition timely where record contained no evidence showing that the court notified defendant of the time limit).

Retroactivity of Jones

Carney argues he is entitled to dismissal of the 1982 conviction and acquittal by reason of insanity and the order of commitment, as well as the 2011 order revoking conditional release, because Jones applies retroactively. Carney asserts Jones is retroactive under the decision in Teague v. Lane, 489 U.S. 288, 311, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989). Whether Jones is retroactive is a question of law we review de novo. State v. Schenck, 169 Wn. App. 633, 642, 281 P.3d 321 (2012).

In Jones, the Washington Supreme Court overruled State v. Smith, 88 Wn.2d 639, 564 P.2d 1154 (1977). Jones, 99 Wn.2d at 744. In Smith, the court held the trial court did not err by imposing the defense of not guilty by reason of insanity over the

7

objection of a defendant. <u>Smith</u>, 88 Wn.2d at 643. The court followed the approach in <u>Whalem v. United States</u>, 346 F.2d 812 (D.C. Cir. 1965), in concluding that "[i]t would clearly be unconstitutional to permit the conviction of a defendant who was legally insane at the time of the commission of the crime." <u>Smith</u>, 88 Wn.2d at 643. The court states that the imposition of a plea of not guilty by reason of insanity did not prejudice the defendant because the jury had to first determine whether the defendant committed the charged crime. <u>Smith</u>, 88 Wn.2d at 645 ("before [the jury] could find defendant not guilty by reason of insanity, the jury first had to find that he committed the act charged"). The court held that "[g]iven these competing interests, the trial court was correct in choosing the course which would uphold the constitution and fulfill his obligation." <u>Smith</u>, 88 Wn.2d at 643.

In <u>Jones</u>, the court reversed and held the trial court could not impose a plea of not guilty by reason of insanity over the objection of a competent defendant. <u>Jones</u>, 99 Wn.2d at 743-44. The court relied on <u>Faretta v. California</u>, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), in concluding a defendant has the constitutional right under the Sixth Amendment "to at least broadly control his own defense." <u>Jones</u>, 99 Wn.2d at 740. "The language and reasoning of <u>Faretta</u> necessarily imply a right to personally control one's own defense. . . . In particular, <u>Faretta</u> embodies 'the conviction that a defendant has the right to decide, within limits, the type of defense he wishes to mount.' " <u>Jones</u>, 99 Wn.2d at 740 (quoting <u>United States v. Laura</u>, 607 F.2d 52, 56 (3d Cir. 1979)).

The United States Supreme Court has deferred to the states as to whether a defendant may assert an insanity defense. See, e.g., Foucha v. Louisiana, 504 U.S. 71, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992). In Foucha, the Court states, in pertinent part:

> [T]he Court's holding . . . places no new restriction on the States' freedom to determine whether, and to what extent, mental illness should excuse criminal behavior. The Court does not indicate that States must make the insanity defense available. See Idaho Code § 18-207(a) (1987) (mental condition not a defense to criminal charges); Mont. Code Ann. § 46-14-102 (1991) (evidence of mental illness admissible to prove absence of state of mind that is an element of the offense).

Foucha, 504 U.S. at 88-89 (O'Connor, J., concurring).[2] In a separate opinion, Justice Kennedy also notes:

> Consistent with the general rule that the definition of both crimes and defenses is a matter of state law, see Patterson v. New York, 432 U.S.[, 197,] 210[, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977)], the States are free to recognize and define the insanity defense as they see fit.

Foucha, 504 U.S. at 96 (Kennedy, J., dissenting).

In determining retroactivity, our supreme court attempts to maintain congruence with the United States Supreme Court decision in Teague. In re Pers. Restraint of Markel, 154 Wn.2d 262, 268, 111 P.3d 249 (2005). In Teague, the Court held that in general, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." Teague, 489 U.S. at 310.

---

[2] (Emphasis added.) State courts are evenly divided over whether the trial court may impose an insanity defense over a defendant's objection. Compare Hendricks v. People, 10 P.3d 1231, 1243-44 (Colo. 2000), with Frendak v. United States, 408 A.2d 364, 379 (D.C. 1979); cf. In re Trombly, 627 A.2d 855, 857 (Vt. 1993) (even though defendant controls the decision whether to request a lesser-included-offense instruction, court may override defendant's refusal of such an instruction if it "is so ill-advised that it undermines a fair trial"); see generally David Cohn, Offensive Use of the Insanity Defense: Imposing the Insanity Defense Over the Defendant's Objection, 15 Hastings Const. L.Q. 295 (Winter 1988).

A rule is " 'new' " under a retroactivity analysis if it " 'breaks new ground' or 'was not <u>dictated</u> by precedent existing at the time the defendant's conviction became final.' " <u>Markel</u>, 154 Wn.2d at 270[3] (quoting <u>Teague</u>, 489 U.S. at 301); <u>see also</u> <u>Chaidez v. United States</u>, ___ U.S. ___, 133 S. Ct. 1103, 1107, 185 L. Ed. 2d 149 (2013) (citing <u>Teague</u>, 489 U.S. at 301). Here, there is no dispute the 1983 decision in <u>Jones</u> announced a new rule of criminal procedure.

When a decision results in a new rule, that rule applies to all criminal cases pending on direct review. <u>Griffith v. Kentucky</u>, 479 U.S. 314, 328, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987). As to convictions that are already final, a defendant can collaterally attack the conviction only if the defendant can establish one of the two exceptions recognized in <u>Teague</u>. <u>In re Pers. Restraint of Rhome</u>, 172 Wn.2d 654, 666, 260 P.3d 874 (2011), applies. The two <u>Teague</u> exceptions apply to (1) a rule that places certain kinds of primary, private individual conduct beyond the State's power to prohibit, which the Court also characterizes as a substantive rule;[4] and (2) a watershed rule of criminal procedure. <u>Schriro v. Summerlin</u>, 542 U.S. 348, 351-52, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004); <u>Teague</u>, 489 U.S. at 311; <u>Rhome</u>, 172 Wn.2d at 666. Carney argues that because both of the <u>Teague</u> exceptions apply, he is entitled to collaterally attack the 1982 acquittal and commitment.

(1)    <u>Substantive Rule Exception</u>

Generally, the substantive rule exception encompasses rules which either decriminalize behavior for which the individual was punished or "narrow the scope of a criminal statute by interpreting its terms." <u>Schriro</u>, 542 U.S. at 351-52; <u>Rhome</u>, 172

---

[3] (Emphasis in original.)

[4] Cara H. Drinan, <u>Graham on the Ground</u>, 87 Wash. L. Rev. 51, 65-66 (2012) (noting that the Court "has shifted its terminology somewhat" in describing the first <u>Teague</u> exception as substantive).

Wn.2d at 666; see also Markel 154 Wn.2d at 269 (exception includes "rule[s] of substantive law" and not "a change in the procedures required under the Sixth Amendment[]"). The Court also applied the first Teague exception to "rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." Penry v. Lynaugh, 492 U.S. 302, 330, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989), abrogated on other grounds by Atkins v. Virginia, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002).

Carney relies on Penry to argue the first exception applies to the rule in Jones.[5] In Penry, the Supreme Court held that as a substantive matter under the Eight Amendment, a rule prohibiting the execution of mentally retarded persons regardless of the procedures allowed would apply retroactively to defendants on collateral review. Penry, 492 U.S. at 330. The rule the Court considered in Penry prohibited the government from imposing a certain type of punishment on a certain class of persons. Penry, 492 U.S. at 329-30. Here, unlike in Penry, the rule in Jones is procedural, not substantive, does not decriminalize any conduct, and does not categorically prohibit the assertion of a plea of not guilty by reason of insanity.

(2)    Watershed Rule Exception

The second Teague exception applies only to "a small set of 'watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.' " Markel, 154 Wn.2d at 269[6] (quoting Schriro, 542 U.S. at 352). " 'That a new procedural rule is fundamental in some abstract sense is not enough; the rule must

---

[5] Carney also cites Graham v. Florida, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). As in Penry, in Graham, the Court held that imposing a life sentence without parole on a juvenile for a non-homicide offense violates the Eighth Amendment. Graham, 560 U.S. at 80-82.

[6] (Internal quotation marks omitted.)

be one without which the likelihood of an accurate conviction is <u>seriously</u> diminished.' " <u>Rhome</u>, 172 Wn.2d at 667[7] (quoting <u>Schriro</u>, 542 U.S. at 352). To qualify as a new watershed rule, the rule must be necessary to prevent " 'an impermissibly large risk' " of an inaccurate conviction, <u>Teague</u>, 489 U.S. at 312 (quoting <u>Desist v. United States</u>, 394 U.S. 244, 262, 89 S. Ct. 1030, 22 L. Ed. 2d 248 (1969)), and must " 'alter our understanding of the <u>bedrock procedural elements</u>" essential to the fairness of a proceeding. <u>Teague</u>, 489 U.S. at 311-12[8] (quoting <u>Mackey v. United States</u>, 401 U.S. 667, 693-94, 91 S. Ct. 1160, 28 L. Ed. 2d 404 (1971)). "It is not enough for the right to be important; it must also play a vital instrumental role in securing a fair trial." <u>State v. Evans</u>, 154 Wn.2d 438, 445, 114 P.3d 627 (2005).

The Court has repeatedly emphasized the limited scope of the second <u>Teague</u> exception. <u>O'Dell v. Netherland</u>, 521 U.S. 151, 157, 117 S. Ct. 1969, 138 L. Ed. 2d 351 (1997) (citing <u>Graham v. Collins</u>, 506 U.S. 461, 478, 113 S. Ct. 892, 122 L. Ed. 2d 260 (1993)). Because any rule " 'would be so central to an accurate determination of innocence or guilt [that it is] unlikely that many such components of basic due process have yet to emerge,' " the Supreme Court has yet to find a new rule that falls under the second <u>Teague</u> exception. <u>Graham</u>, 506 U.S. at 478 (quoting <u>Teague</u>, 489 U.S. at 313). " 'This class of rules is extremely narrow, and it is unlikely that any . . . ha[s] yet to emerge.' " <u>Markel</u>, 154 Wn.2d at 269[9] (quoting <u>Schriro</u>, 542 U.S. at 352).

The only rule the United States Supreme Court has identified as an example of what might fall within the watershed rule exception is <u>Gideon v. Wainwright</u>, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). The Court states that <u>Gideon</u> " 'alter[ed] our

---

[7] (Emphasis in original) (internal quotation marks omitted).

[8] (Emphasis in original.)

[9] (Alterations in original) (internal quotation marks omitted).

understanding of the bedrock procedural elements essential to the fairness of a proceeding.' " Beard v. Banks, 542 U.S. 406, 418, 124 S. Ct. 2504, 159 L. Ed. 2d 494 (2004)[10] (quoting Sawyer v. Smith, 497 U.S. 227, 242, 110 S. Ct. 2822, 111 L. Ed. 2d 193 (1990)). In applying the second Teague exception, the Court has "looked to the example of Gideon, and 'we have not hesitated to hold that less sweeping and fundamental rules' do not qualify." Whorton v. Bockting, 549 U.S. 406, 421, 127 S. Ct. 1173, 167 L. Ed. 2d 1 (2007) (quoting Beard, 542 U.S. at 418).

In Gideon, the Court held that counsel must be appointed for any indigent defendant charged with a felony. Gideon, 372 U.S. at 344-45. When a defendant who wishes to be represented by counsel is denied representation, Gideon held that the risk of an unreliable verdict is intolerably high. Gideon, 372 U.S. at 344-45; see Mickens v. Taylor, 535 U.S. 162, 166, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002); United States v. Cronic, 466 U.S. 648, 658-59, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). The new rule announced in Gideon eliminated this risk.

The new rule in Jones is in no way comparable to Gideon, and the relationship of the Jones rule to the accuracy of the fact-finding process is far less direct or profound. Gideon effected a profound and " 'sweeping' " change. Whorton, 549 U.S. at 421 (quoting Beard, 542 U.S. at 418). The decision in Jones did not change the need for the jury to first determine whether a defendant committed the charged crime or the right to assert the defense of not guilty by reason of insanity. Emphasizing the right under Faretta to control the defense, the court in Jones limited the authority of the trial court to impose the defense over the objection of a competent defendant. Jones, 99 Wn.2d at 740.

---

[10] (Emphasis in original) (alteration in original).

We hold that the change in the law and new rule of criminal procedure adopted by the court in Jones is not a watershed rule that applies retroactively. See Markel, 154 Wn.2d at 273 (refusing to apply Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), retroactively); Evans, 154 Wn.2d at 447-48 (concluding neither Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), nor Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), apply retroactively); State v. Abrams, 163 Wn.2d 277, 290-92, 178 P.3d 1021 (2008) (perjury statute requiring judge rather than jury to determine materiality was unconstitutional but not retroactive).[11]

RCW 10.73.100(6)

Carney argues that even if the two exceptions under Teague do not apply, the decision in Jones is retroactive under the significant and material change in the law exception to the one-year time bar on collateral attacks under RCW 10.73.100(6).[12] We disagree. In a recent case, In re Pers. Restraint of Haghighi, 178 Wn.2d 439, 309 P.3d 459 (2013), the Washington Supreme Court reiterated that it has "interpreted RCW

---

[11] We also note that in cases predating Teague, several courts held that Faretta did not apply retroactively. Martin v. Wyrick, 568 F.2d 583, 587 (8th Cir. 1978) ("the determination that the purpose underlying Faretta was not to enhance the fact-finding process strongly suggests the rule should not be made retroactive."); People v. McDaniel, 16 Cal.3d 156, 166 (1976) (purpose of Faretta rule is not "to enhance the reliability of the truth-determining or fact-finding process"); Scott v. State, 345 So.2d 414, 416-17 (Fl. Dist. Ct. App. 1977); Houston v. Nelson, 404 F. Supp. 1108, 1115 (D.C. Cal. 1975). But see People v. Holcomb, 395 Mich. 326, 336 n.7 (1975).

[12] RCW 10.73.100(6) states:

The time limit specified in RCW 10.73.090 does not apply to a petition or motion that is based solely on one or more of the following grounds: . . . There has been [(1)] a significant change in the law, whether substantive or procedural, [(2)] which is material to the conviction, sentence, or other order entered in a criminal or civil proceeding instituted by the state or local government, and [(3)] either the legislature has expressly provided that the change in the law is to be applied retroactively, or a court, in interpreting a change in the law that lacks express legislative intent regarding retroactive application, determines that sufficient reasons exist to require retroactive application of the changed legal standard.

(Alterations added.)

14

10.73.100 as a procedural rule that is entirely consistent with the federal retroactivity analysis. . . . Since Teague . . . , this court has consistently and repeatedly followed and applied the federal retroactivity analysis as established in Teague." Haghighi, 178 Wn.2d at 464, 462; see also Markel, 154 Wn.2d at 268; Abrams, 163 Wn.2d at 291 (interpreting RCW 10.73.100(6) consistent with Teague); In re Pers. Restraint of Benn, 134 Wn.2d 868, 939-40, 952 P.2d 116 (1998).

The cases Carney relies on to argue that the exception under RCW 10.73.100(6) applies are inapposite. None of these cases address retroactivity, implicate a new constitutional procedural rule, or address whether sufficient reasons exist to require retroactive application of the changed legal standard. See In re Pers. Restraint of Lavery, 154 Wn.2d 249, 111 P.3d 837 (2005) (holding change in law determining strike offenses was significant change in the law without discussing retroactivity); In re Pers. Restraint of Rowland, 149 Wn. App. 496, 204 P.3d 953 (2009) (holding change in comparability rule affecting offender score is significant change in the law under RCW 10.73.100(6) without discussing retroactivity); In re Pers. Restraint of Smith, 117 Wn. App. 846, 73 P.3d 386 (2003), abrogated by In re Pers. Restraint of Domingo, 155 Wn.2d 356, 119 P.3d 816 (2005) (holding that change to limits of accomplice liability was significant change in the law under RCW 10.73.100(6) without discussing retroactivity).

Because <u>Jones</u> is not retroactive, Carney cannot collaterally attack the 1982 acquittal by reason of insanity and commitment or the 2011 order revoking conditional release. We affirm.

WE CONCUR:

Schindler, J.

Appelwick, J.

Becker, J.