**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
FEBRUARY 4, 2021

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
FEBRUARY 4 2021

*Susan L. Carlson*
SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | No. 97456-0 |
| | ) | |
| VINCENT L. FOWLER, | ) | En Banc |
| | ) | |
| Petitioner. | ) | Filed: February 4, 2021 |
| _____ | ) | |

GONZÁLEZ, C.J.— The writ of habeas corpus is enshrined in our state and federal constitutions. WASH. CONST. art. I, § 13; U.S. CONST. art. I, § 9. Our legislature has the power to expand habeas corpus and frame it in ways that do not impinge on the writ's fundamental nature. *See In re Pers. Restraint of Runyan*, 121 Wn.2d 432, 444-45, 853 P.2d 424 (1993). Reasonable time limits, with appropriate exceptions, are constitutionally permissible. *Id.* at 444. In our state, those restrained under facially valid judgments have at least a year to bring a habeas-style challenge. RCW 10.73.090, .100. A year after that judgment is final, the statutory grounds for relief that may be raised are limited. RCW 10.73.090, .100. In keeping with the importance of the writ, the one-year time limit is subject to equitable tolling in extraordinary circumstances. *See In re Pers. Restraint of Haghighi*, 178 Wn.2d 435, 447-48, 309 P.3d 459 (2013); *State v. Littlefair*, 112

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Fowler*, No. 97456-0

Wn. App. 749, 759, 51 P.3d 116 (2002); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990)).

Long before his judgment and sentence was final, Vincent Fowler hired and paid an attorney, John Crowley, to prepare and file his personal restraint petition (PRP). But after repeatedly and falsely assuring his client he was working on the PRP, Crowley stopped responding to calls. As the one-year time bar approached and it became apparent Crowley had abandoned him, Fowler hired a new attorney. Fowler learned Crowley had resigned his law license rather than face professional discipline for failing to diligently represent other clients, among other things. Before the time bar passed, Fowler's present counsel filed a "placeholder" PRP explaining he needed additional time to get Fowler's legal file and investigate grounds for relief. After the time bar had passed, counsel filed a "supplemental" PRP arguing Fowler's trial attorney was ineffective. The Court of Appeals dismissed the PRP as untimely.

This court has inherent authority to grant a timely filed motion to extend the time limit to file a habeas-style challenge to a conviction. *See In re Pers. Restraint of Davis*, 188 Wn.2d 356, 362 n.2, 395 P.3d 998 (2017). Further, courts have the authority, under appropriate circumstances, to equitably toll the statutory time limit on personal restraint petitions and habeas petitions. *Haghighi*, 178 Wn.2d at 447;

2

*In re Pers. Restraint of Fowler*, No. 97456-0

*Littlefair*, 112 Wn. App. at 759; *Pace*, 544 U.S. at 418. We conclude that equitable tolling is warranted here. The misconduct of Fowler's attorney was egregious and Fowler exercised diligence. We reverse the Court of Appeals and remand for consideration on the merits.

FACTS

Fowler was convicted of two counts of first-degree child molestation and one count of first-degree rape of a child. The Court of Appeals affirmed. *State v. Fowler*, No. 33227-6-III, slip op. at 1 (Wash. Ct. App. Aug. 18, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/332276.unp.pdf. We granted review and remanded for correction of an unrelated error. The superior court entered an amended judgment and sentence on October 19, 2016. Before the judgment was final, Fowler's brother Darryl Fowler hired an attorney to prepare and file a PRP for Fowler. Darryl[1] hired John Crowley on September 2, 2015, more than two years before the PRP's due date of October 20, 2017. Darryl paid Crowley a significant retainer in advance.

While incarcerated at Stafford Creek Corrections Center, Fowler was able to speak with Crowley "on only a couple of occasions, and he called me 'Victor.'" Suppl. Br. of Pet'r, Ex. D, ¶ 16 (Decl. of Vincent Fowler) (Wash. Ct. App. No. 51029-4-II (2018)). Crowley falsely assured his client that he was working on his

---

[1] We use Darryl Fowler's first name for clarity. No disrespect is intended.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Fowler*, No. 97456-0

PRP and "had all sorts of plan[s] of what he was going to do." *Id.* Crowley became more difficult to reach, and in June 2017, all of Fowler's calls started going to voice mail. Fowler's brother and other family members attempted to contact Crowley "numerous times, but to no avail." Suppl. Br. of Pet'r, Ex. F, ¶ 3 (Decl. of Darryl Fowler) (Wash. Ct. App. No. 51029-4-II (2018)). In August of 2017, just two months before the PRP was due, Fowler discovered that Crowley's phone line was disconnected. During this time, it did not appear that Crowley had produced anything for Fowler's case.

Meanwhile, and unknown to Fowler, Crowley was under investigation for professional misconduct in other cases where he had taken a fee and done little or no work. On July 18, 2017, Crowley resigned from the practice of law rather than face professional discipline.

As the one-year time bar approached and it became apparent Crowley had abandoned his brother, Darryl hired a new attorney. Darryl met with John Henry Browne on October 6, 2017 and almost immediately hired him. Browne informed Darryl that Crowley had "retired . . . in lieu of discipline and disbarment." *Id.* at ¶ 4. This was the first time Darryl or Fowler had heard this. Around the same time, Fowler also heard about Crowley's incompetence from several other inmates. The record suggests Crowley has not returned the unearned fee. Crowley also failed to share Fowler's case file with Browne.

*In re Pers. Restraint of Fowler*, No. 97456-0

Before the deadline passed, Browne filed something he characterized as a "placeholder" petition for review in the Court of Appeals on October 18, 2017.[2] This petition stated that Fowler's counsel needed additional time to get Fowler's legal file and investigate grounds for relief. The Court of Appeals treated Fowler's petition as a "motion to file a supplemental petition" and directed Fowler to address why the one-year time bar under RCW 10.73.090 did not warrant dismissal. Comm'r's Letter Ruling, No. 51029-4-II (Wash. Ct. App. Nov. 21, 2017).

In March 2018, after the time bar had run, Fowler's counsel filed a supplemental petition arguing that the one-year time bar should be equitably tolled because Fowler's prior counsel was ineffective and asserting that the court may waive the time limit under RAP 18.8.[3] The Court of Appeals held that equitable tolling applies only when a petitioner asserts bad faith, deception, or false assurances by the opposing party, and that RAP 18.8 does not give the court authority to waive the statute of limitations. *In re Pers. Restraint of Fowler*, 9 Wn.

---

[2] We note that the State argues the one-year clock began to run on May 2, 2016, when the Court of Appeals opinion mandated, and not October 19, 2016, when the superior court entered its amended judgment and sentence. Suppl. Br. of Resp't at 4. The Court of Appeals correctly held that the time bar ran in October, not May. We decline to revisit this holding.

[3] RAP 18.8 allows an appellate court to "waive or alter the provisions of any of these rules and enlarge or shorten the time within which an act must be done in a particular case in order to serve the ends of justice," subject to certain restrictions.

*In re Pers. Restraint of Fowler*, No. 97456-0

App. 2d 158, 164-65, 167, 442 P.3d 647 (2019).  We granted review.  *In re Pers.*

*Restraint of Fowler*, 195 Wn.2d 1007 (2020).

ANALYSIS

I.      Statutory Limitations and Inherent Power

This court has inherent power to waive the statutory limitations period for a

habeas challenge.  *Davis*, 188 Wn.2d at 362 n.2.  This flows from our plenary

judicial power, which includes original jurisdiction over writs of habeas.  *Id.*;

WASH. CONST. art. IV, § 4.  Our legislature has the power to expand and frame

habeas style challenges, so long as it does not impinge on the writ's fundamental

nature.  *See Runyan*, 121 Wn.2d at 443-44.  Nothing in chapter 10.73 RCW

deprives this court of the authority to extend the time bar in response to a timely

filed motion based on adequate grounds.  *See Davis*, 188 Wn.2d at 362 n.2.

We agree with the Court of Appeals that RAP 18.8 does not grant courts the

authority to waive a statute of limitations.  RAP 18.8 states that the "appellate

court may, on its own initiative or on motion of a party, waive or alter the

provisions of any of these rules and enlarge or shorten the time within which an act

must be done." RAP 18.8(a).  RAP 18.8 applies to court rules—it does not grant

the court the ability to "waive or alter *statutes*" like the one-year time limit in

RCW 10.73.090.  *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 938-39, 952 P.2d

116 (1998) (emphasis added).  But this court's inherent power is not related to

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

RAP 18.8. *See Davis*, 188 Wn.2d at 362 n.2 (exercising inherent power with no reference to RAP 18.8). The inherent power of this court does not depend on the rules of appellate procedure. WASH. CONST. art. IV, §§ 4, 6.

The Court of Appeals concluded that "[t]he statutory time limit is a mandatory rule that acts as a bar to appellate court consideration of collateral attacks, unless the petitioner shows that a statutory exception applies." *Fowler*, 9 Wn. App. 2d at 167 (citing *State v. Robinson*, 104 Wn. App. 657, 662, 17 P.3d 653 (2001)). This is incorrect. This court may exercise its inherent power to consider a collateral attack even if it would normally be barred by the statutory time limit.

II. Equitable Tolling

It is well established that the statutory one-year time bar for filing a PRP is not jurisdictional and may be subject to equitable tolling. *Haghighi*, 178 Wn.2d at 447. Equitable tolling is a remedy, used sparingly, that allows an action to proceed "when justice requires it, even though a statutory time period has elapsed." *In re Pers. Restraint of Bonds*, 165 Wn.2d 135, 141, 196 P.3d 672 (2008) (plurality opinion). We have previously held that equitable tolling in collateral restraint actions is warranted when a petitioner shows they have diligently pursued their rights and the petition was untimely because of bad faith, deception, or false assurances. *See Haghighi*, 178 Wn.2d at 447-48.

*In re Pers. Restraint of Fowler*, No. 97456-0

We have not considered whether the petitioner's own attorney's misconduct can also give rise to cause for equitable tolling. But federal courts, applying equitable tolling to the statutory time limit for federal habeas petitions, have concluded it can. *Holland v. Florida*, 560 U.S. 631, 653, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010); *Gibbs v. Legrand*, 767 F.3d 879, 882 (9th Cir. 2014). We adopt this federal standard to supplement our own. A petitioner seeking equitable tolling bears the burden of showing (1) that they diligently pursued their rights and (2) that an extraordinary circumstance prevented a timely filing. *Lawrence v. Florida*, 549 U.S. 327, 336, 127 S. Ct. 1079, 166 L. Ed. 2d 924 (2007) (citing *Pace*, 544 U.S. at 418). Extraordinary circumstances include, but are not limited to, bad faith, deception, or false assurances by another such as, in some cases, a petitioner's own counsel. *See id.*; *see also Haghighi*, 178 Wn.2d at 447-48. Under this standard, ordinary attorney negligence, such as miscalculating the filing deadline, is generally not an extraordinary circumstance. *Holland*, 560 U.S. at 651-52. But sufficiently egregious attorney misconduct—such as an attorney's failure to file their client's collateral challenge despite being timely hired to do so—creates an extraordinary circumstance that justifies equitable tolling. *See Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003) (equitable tolling appropriate when counsel failed to file a habeas petition despite being hired to do so, failed to conduct any legal research, and failed to communicate with his client); *John Doe v.*

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Fowler*, No. 97456-0

*Busby*, 661 F.3d 1001, 1011-12 (9th Cir. 2011) (equitable tolling appropriate when counsel failed to timely file a habeas petition despite having promised to do so, even though the petitioner hired him over a year before the deadline, paid him $20,000, gave him the files, and repeatedly asked him about the case); *Spitsyn v. Moore*, 345 F.3d 796, 798, 800-02 (9th Cir. 2003) (equitable tolling appropriate when counsel failed to file a habeas petition even though Spitsyn hired him almost a year before the deadline and contacted him three times and filed two complaints with the bar).[4]

The State argues that under *Haghighi*, equitable tolling is warranted only where the impediment to timely filing involves bad faith, deception, or false assurances *by the opposing party*—here, the State. In *Haghighi*, we declined to apply equitable tolling where a pro se petitioner filed a timely PRP and was appointed counsel shortly before the time bar, and after the time bar, petitioner's counsel sought to add an additional constitutional claim. 178 Wn.2d at 440-41,

---

[4] We recognize that our precedent regarding equitable tolling has not been entirely clear. In *Bonds*, a plurality favored a narrow test requiring "bad faith, deception, or false assurances" to be demonstrated by the petitioner. 165 Wn.2d at 141 (Johnson, J., lead opinion). But between the dissent and the concurrence, five justices would have allowed equitable tolling to apply in broader contexts. *Id.* at 144 (Alexander, C.J., concurring), 147 (Sanders, J., dissenting). As we noted in *In re Pers. Restraint of Carter*, "equitable tolling . . . may be available in contexts broader than those recognized by the *Bonds* plurality." 172 Wn.2d 917, 929, 263 P.3d 1241 (2011). Most recently, our decision in *Haghighi* was silent as to whether the "bad faith, deception, or false assurances" must be caused by the opposing party, the State, the defendant, or simply "another." *See* 178 Wn.2d at 447 (recognizing without clarifying that "[a]lthough this court has not previously settled what standard should be applied in this context, traditionally we have allowed equitable tolling when justice requires its application and when the predicates of bad faith, deception, or false assurances are met," as well as petitioner diligence).

*In re Pers. Restraint of Fowler*, No. 97456-0

449. Because Haghighi knew all the facts relevant to that untimely claim when he filed his initial PRP and was not prevented from raising it then, equitable tolling was not warranted. *Id.* at 449. We were not asked to decide, and therefore did not hold, that equitable tolling was limited to malfeasance by the opposing party. We see no reason for such a limitation. Such a limitation would undermine the purpose of equitable tolling—to ensure fundamental fairness when extraordinary circumstances have stood in a petitioner's way. Accordingly, the Court of Appeals erred when it stated that "Washington courts require bad faith, deception, or false assurances *caused by the opposing party or the court*" in order to justify equitable tolling. *Fowler*, 9 Wn. App. 2d at 166 (emphasis added).

Crowley's misconduct is the type of extraordinary circumstance that justifies equitable tolling. *See Baldayaque*, 338 F.3d at 152; *Doe*, 661 F.3d at 1011-12; *Spitsyn*, 345 F.3d at 800-02. Even though Fowler's family hired Crowley two years in advance of the statutory deadline, Crowley completely failed to prepare and file a personal restraint petition. "[F]undamental canons of professional responsibility . . . require attorneys to perform reasonably competent legal work, to communicate with their clients, to implement clients' reasonable requests, to keep their clients informed of key developments in their cases, and never to abandon a client." *Holland*, 560 U.S. at 652-53 (citing Br. for Legal Ethics Professors et al. as Amici Curiae in Supp. of Pet'r). Crowley violated these canons. He falsely

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Fowler*, No. 97456-0

assured Fowler he was working on the PRP, but in fact, he produced nothing and essentially disappeared, resigning from the practice of law and disconnecting his phone line without notifying Fowler or returning Fowler's case file. Fowler had to find out through another attorney, on the eve of the time bar, that Crowley was facing discipline and resigned. And when asked by Fowler's new attorney for his case file, Crowley never provided it.

Fowler has shown not only egregious attorney misconduct that prevented him from timely filing his PRP but also that he diligently pursued his rights. Fowler, through his brother, promptly hired Crowley to prepare his PRP after the Court of Appeals affirmed his convictions on direct appeal in 2015. The one-year time clock for filing his PRP began to run on October 19, 2016. Fowler and his family members reached out to Crowley repeatedly to check on the status of his case. When Fowler was able to talk to Crowley, Crowley assured him he was working on the case and had plans for the petition. After calls to Crowley started going to voice mail in June 2017 and the October 2017 deadline began approaching, Fowler's brother hired a new lawyer *before* the deadline. Present counsel promptly requested additional time to get Fowler's legal files, do the necessary investigation, and prepare Fowler's PRP raising an ineffective assistance of trial counsel claim.

The diligence required for equitable tolling is not "exceptional" diligence, *Baldayaque*, 338 F.3d at 153, or "'maximum feasible diligence,'" *Holland*, 560 U.S. at 653 (internal quotation marks omitted) (quoting *Starns v. Andrews*, 524 F.3d 612, 618 (5th Cir. 2008)). Instead, a petitioner is required to act as diligently as reasonably can be expected under the circumstances. *See Holland*, 560 U.S. at 653; *Baldayaque*, 338 F.3d at 153. While Fowler recognized as early as June that he was having difficulty reaching Crowley, his delay until October to obtain new counsel was reasonable, especially taking into account Crowley's assurances that he was working on the case and the fact that Fowler was in prison. *See Spitsyn*, 345 F.3d at 801 (rejecting an argument that a petitioner should have hired a new attorney earlier because "it is not evident that [he] should have concluded . . . [his attorney] was going to fail [him] completely. Non-responsiveness may be unprofessional, but it is hardly unheard of"); *Doe*, 661 F.3d at 1014 (holding that a petitioner's reliance on his absent attorney was reasonable given that the petitioner was "[u]ntrained in the technicalities of habeas law and incarcerated . . . [and] in no position to . . . observe the thoroughness of the attorney's supposedly ongoing investigation for evidence").

Fowler's reasonable reliance on his attorney should not deprive him of his *sole* opportunity to bring his ineffective assistance of counsel claim. Fowler is entitled to equitable tolling of the limitations period from October 19, 2016, when

*In re Pers. Restraint of Fowler*, No. 97456-0

the limitations period would otherwise have commenced, until October 9, 2017, the date he retained new counsel. Accordingly, his PRP is timely and will be considered on the merits.

CONCLUSION

Habeas is an important check on state power. Like nearly everything else in our constitutional system of government, habeas-style procedures are subject to reasonable limitations, such as time limits. Courts may equitably toll time limits in extraordinary circumstances where the petitioner diligently pursued their rights. Fowler was diligent and his former attorney's extraordinary actions prevented the timely filing of his PRP. We reverse, hold the petition is timely, and remand to the Court of Appeals for consideration on the merits.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Fowler*, No. 97456-0


González, C.J.

WE CONCUR:

Johnson, J.

Gordon McCloud, J.

Madsen, J.

Yu, J.

Montoya-Lewis, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 97456-0

WHITENER, J. (dissenting)—This case concerns whether Vincent L. Fowler can bring an untimely personal restraint petition (PRP) when his former counsel, John Crowley, failed him in numerous ways. The majority holds that RCW 10.73.090's one-year statute of limitations has been equitably tolled.

I agree with Part I of the majority opinion, which concludes that the Court of Appeals correctly held that RAP 18.8 does not permit courts to waive the statute of limitations. I also agree that one's counsel may, in fact, behave so poorly as to permit equitable tolling of RCW 10.73.090's one-year time bar. However, I part ways with the majority in two areas. First, the majority adopts the federal standard for equitable tolling without providing a persuasive reason to do so. Second, irrespective of which standard is applied—ours or the federal standard—Fowler did not exercise diligence in pursuit of his rights. Thus, we should not hold that the statute of limitations has been equitably tolled and should instead affirm the Court of Appeals. For those reasons, I respectfully dissent.

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

I.    We should not adopt the federal standard for equitable tolling in addition to our own

"[T]raditionally we have allowed equitable tolling when justice requires its application and when the predicates of bad faith, deception, or false assurances are met, and where the petitioner has exercised diligence in pursuing his or her rights." *In re Pers. Restraint of Haghighi*, 178 Wn.2d 435, 447, 309 P.3d 459 (2013). The majority departs from this tradition—and thus our precedent—by adopting the federal standard, in addition to our standard, in which a statute of limitations is tolled when (1) the petitioner has been diligently pursuing their rights and (2) extraordinary circumstances prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)).

Our line of equitable tolling cases has developed its own standards, independent from the one used in the federal courts. When our court held RCW 10.73.090 can be equitably tolled, we relied on statutory interpretation, discussing "the policies underlying the statute and the purposes underlying the statute of limitation." *In re Personal Restraint of Bonds*, 165 Wn.2d 135, 141, 196 P.3d 672 (2008) (plurality opinion). In establishing the standard for equitable tolling in the PRP context, *Bonds*' four-justice plurality applied the standard from the civil context, where the petitioner must show "bad faith, deception, or false assurances

2

*In the Matter of the Pers. Restraint of Fowler (Vincent L.)*, No. 97456-0
Whitener, J. (dissenting)

by the defendant and the exercise of diligence by the plaintiff." *Id.* The two-justice

concurrence argued that equitable tolling should apply in broader circumstances

than those outlined by the plurality. *Id.* at 144-45 (Alexander, C.J., concurring).

Only the three-justice dissent preferred the federal standard for equitable tolling.

*See id.* at 146 (Sanders, J., dissenting) (quoting *Pace*, 544 U.S. at 418).

In *In re Personal Restraint of Carter*, 172 Wn.2d 917, 263 P.3d 1241

(2011), the court confronted the options provided by *Bonds*. We concluded that

"[c]onsistent with the majority of the justices in *Bonds*, we recognize that equitable

tolling of the time bar *may be available in contexts broader than those recognized*

*by the* Bonds *plurality*." *Id.* at 929 (emphasis added).

*Haghighi* followed, and though we did not acknowledge *Carter*'s apparent

broadening of equitable tolling, we did not hold that the State or the court must

cause the late filing through bad faith, deception, or false assurances. *See*

*Haghighi*, 178 Wn.2d at 447, 449. We also did not refute *Carter*'s "recogni[tion]

that equitable tolling of the time bar may be available in contexts broader than

those recognized by the *Bonds* plurality." 172 Wn.2d at 929; *see generally*

*Haghighi*, 178 Wn.2d 435. We did refer to "the civil standard" of equitable tolling,

which does require bad faith, deception, or false assurances to be predicated on the

acts of the opposing party. *Haghighi*, 178 Wn.2d at 449; *see Millay v. Cam*, 135

Wn.2d 193, 206, 955 P.2d 791 (1998) (providing the civil standard). But the

3

*In the Matter of the Pers. Restraint of Fowler (Vincent L.)*, No. 97456-0
Whitener, J. (dissenting)

absence of any rejection of *Carter* or the *Bonds* plurality left that line of precedent intact.

The majority decides to expand our doctrine of equitable tolling by adopting the federal standard "to supplement our own." Majority at 8. But the majority offers no reason for us to do so. It simply asserts that the federal standard now also applies in our state, alongside our traditional standard.

We should instead solely use our traditional standard of equitable tolling, articulated most recently in *Haghighi*. 178 Wn.2d at 447 (permitting equitable tolling in the PRP context when "when justice requires its application and when the predicates of bad faith, deception, or false assurances are met, and where the petitioner has exercised diligence in pursuing his or her rights"). However, also keeping in mind that *Carter* expressly left open the possibility that "equitable tolling of the time bar may be available in contexts broader than those recognized by the *Bonds* plurality," 172 Wn.2d at 929, we should expand the reach of equitable tolling beyond the civil standard relied on in *Haghighi* and the *Bonds* plurality. We should thus hold that at least in the PRP context, a petitioner may rely on the actions of their own attorney, not just that of the State and the court, to establish the predicates of bad faith, deception, and false assurances.

I disagree with the majority's decision to adopt the federal standard in addition to our own for several reasons. It lacks foundation in our precedent. While

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*one* opinion in *Bonds* invoked the federal standard, federal law played no role in our decision to apply equitable tolling to RCW 10.73.090. 165 Wn.2d at 146 (Sanders, J., dissenting) (quoting *DiGuglielmo*, 544 U.S. at 418). None of the opinions in *Bonds*, nor any of our subsequent cases, disagreed with the portion of the *Bonds* plurality that drew our standard for equitable tolling from statutory interpretation and our case law. *See id.* at 141 (lead opinion), 144-45 (Alexander, C.J., concurring) (not disagreeing with plurality about the origins of equitable tolling in this context), 145-46 (Sanders, J., concurring) (same); *Carter*, 172 Wn.2d at 928 (simply citing *Bonds* for the proposition that equitable tolling is permitted); *Haghighi*, 178 Wn.2d at 447 (same). To suddenly adopt the federal standard when the origin of our standard for equitable tolling lies in state law strikes me as unnecessary.

The majority implies that courts in our state have long employed the extraordinary circumstances prong of the federal standard for equitable tolling. Majority at 1-2 ("[T]he one-year time limit is subject to equitable tolling in extraordinary circumstances." (citing *Haghighi*, 178 Wn.2d at 447-48; *State v. Littlefair*, 112 Wn. App. 749, 759, 51 P.3d 116 (2002))). But these cases do not support the majority's implication. *Haghighi* referenced "extraordinary circumstances" only when describing another case, one that was only tenuously related to equitable tolling. 178 Wn.2d at 446 n.3. The passage cited by the

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

majority, rather than supporting the use of the extraordinary circumstances prong of the federal standard for equitable tolling, instead emphasizes how we considered it "unwise and unnecessary to expand the doctrine [of equitable tolling] beyond the traditional standard." *Id.* at 448. And while *Littlefair* did indicate that a petitioner could rely on attorney misconduct to establish the predicates of equitable tolling, it nevertheless did so within the context of our traditional standard, not the federal standard. 112 Wn. App. at 759-60, 762-63. Its only use of "extraordinary circumstances" was with respect to CrR 7.8(b)—and, even then, only in the dissent. *Id.* at 772 (Bridgewater, J., dissenting).

Fowler does not provide persuasive reasons to adopt the federal standard, either. Fowler argues that "the [state and federal] standards should . . . be analogous" because, he claims, "the state and federal statutes are analogous." Suppl. Br. of Pet'r at 17. But the statutes are analogous only in terms of their generalities: for instance, both have a one-year time bar for filing collateral attacks. *Compare* RCW 10.73.090, *with* 28 U.S.C. § 2255(f). This high-level similarity between the statutes does not provide reason to follow the federal standard. *See Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 868, 281 P.3d 289 (2012) (indicating that we follow federal statutory interpretation when a state statute is "'taken "substantially verbatim" from [a] federal statute' . . . " (alteration

*In the Matter of the Pers. Restraint of Fowler (Vincent L.)*, No. 97456-0
Whitener, J. (dissenting)

in original) (quoting *State v. Bobic*, 140 Wn.2d 250, 264, 996 P.2d 610 (2000) (quoting *State v. Carroll*, 81 Wn.2d 95, 109, 500 P.2d 115 (1972)))).

Fowler also argues that we should follow federal law because of *Littlefair*, 112 Wn. App. 749. This is unpersuasive. There, the Court of Appeals held RCW 10.73.090 can be equitably tolled because the aforementioned federal statute can be equitably tolled. *Id.* at 758-59 (quoting Mark A. Wilner, Notes and Comments, *Justice at the Margins: Equitable Tolling of Washington's Deadline for Filing Collateral Attacks on Criminal Judgments*, 75 WASH. L. REV. 675, 695 (2000)). But, as noted above, *Littlefair* did *not* go on to use the federal standard. *Id.* at 759-60. In any event—and also discussed above—when this court later held that equitable tolling applied to PRPs under state law, we relied on statutory interpretation and our case law, not federal law. *Bonds*, 165 Wn.2d at 140-41.

I would maintain that equitable tolling applies "when justice requires its application and when the predicates of bad faith, deception, or false assurances are met, and where the petitioner has exercised diligence in pursuing his or her rights." *Haghighi*, 178 Wn.2d at 447. I would hold that the predicates can be premised on the actions of counsel in the PRP context and that Crowley's behavior satisfies those predicates here. However, neither the majority nor Fowler persuades me that we should adopt the federal standard for equitable tolling.

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

II.    Fowler was not diligent under either the state or the federal standard for equitable tolling

While I agree with the majority that the Court of Appeals erroneously limited the reach of equitable tolling (irrespective of my disagreement about the federal standard), I nevertheless would reach the opposite result and affirm the Court of Appeals. Beyond satisfying the predicates, the petitioner must also prove that they exercised diligence in pursuing their rights. *Haghighi*, 178 Wn.2d at 447. Fowler did not exercise diligence, and we should dismiss his PRP on this ground.

The evidence Fowler has provided reveals that rather than exercising diligence, he waited while it became increasingly clear that Crowley was doing nothing on his case. Fowler first retained Crowley on or about September 2, 2015, shortly after his conviction was affirmed on direct appeal—a date two years prior to when his PRP was due. Suppl. Br. of Pet'r App., Ex. F (Decl. of Darryl Fowler) (Wash. Ct. App. No. 51029-4-II (2018)). By the time the clock began to run on filing his PRP, on October 19, 2016, Fowler had retained Crowley for over a year. But from September 2, 2015 to October 6, 2017, Fowler spoke with Crowley "on only a couple of occasions" during which Crowley misstated Fowler's name, and Fowler's brother and his family were unable to contact him at all. *Id*. Ex. D (Decl. of Vincent Fowler), Ex. F (Decl. of Darryl Fowler). Despite Crowley's evident

*In the Matter of the Pers. Restraint of Fowler (Vincent L.)*, No. 97456-0
Whitener, J. (dissenting)

lack of progress, Fowler apparently did nothing more than infrequently attempt to get in touch with Crowley.

Furthermore, from June 2017 onward, Fowler was entirely unable to reach Crowley by phone. *Id*. Ex. D (Decl. of Vincent Fowler). Yet it was not until *October* 2017 that Fowler retained present counsel. *Id.* In such a situation, Fowler's allowing months to pass without making any apparent attempt to verify whether Crowley was making progress on his case, without attempting to retain other counsel—without, it seems, doing much of anything other than waiting—does not show that he was diligent. Absent any evidence indicating that Fowler attempted to act, or was prevented from acting, during this time, I cannot conclude that Fowler "exercised diligence in pursuing his . . . rights." *Haghighi*, 178 Wn.2d at 447.

It is true that exercising diligence is more difficult for the incarcerated than for others. *See* Br. of Amicus Curiae Wash. Assoc. Criminal Def. Lawyers at 18-19 (highlighting difficulties prisoners face complying with PRP procedures). A prisoner might be placed in solitary confinement, have minimal education, experience language barriers, or receive little access to a phone through which they can call their attorney. But Fowler has provided no indication that he faced any such barriers. Rather, he has shown that he was capable of contacting counsel, both directly and through members of his family. What the record fails to show is why,

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

in June 2017, when he was unable to reach Crowley—and when 22 months had already passed since he had retained Crowley in September 2015 without any evident progress on his case—Fowler did nothing for about another four months, until October 2017, to rectify the situation. Such behavior does not constitute diligence.

The majority uses the federal standard to conclude that Fowler was diligent. But Fowler cannot show he was diligent under the federal standard, either, for the same reasons as above. The majority relies in large part on *Spitsyn v. Moore*, 345 F.3d 796 (9th Cir. 2003), and *John Doe v. Busby*, 661 F.3d 1001 (9th Cir. 2011), to reach the opposite conclusion. *See* majority at 12.

These cases do not indicate that Fowler was diligent under the federal standard. In *Spitsyn*, the Ninth Circuit Court of Appeals did not hold that Spitsyn was diligent; it remanded for "consideration of whether Spitsyn exercised reasonable diligence in ultimately filing his petition." 345 F.3d at 802. The Ninth Circuit, while believing that Spitsyn *may* have been diligent, was not fully convinced by the record before it. *Id.* This was despite the fact that the record before the Ninth Circuit provided greater evidence of diligence than the one before us today. Spitsyn and his mother not only wrote to Spitsyn's attorney to "inquire about the case" and "complain" but they also filed grievances with the Washington State Bar Association against the attorney. *Id.* at 798. It was based on this record

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

that the Ninth Circuit determined that Spitsyn *might* have been diligent but refrained from holding that was the case. *Id.* at 802. The majority, relying on less evidence, holds that Fowler was diligent. The federal standard does not support that outcome.

In *Doe*, where the Ninth Circuit determined that Doe was diligent, Doe did far more than Fowler. *See* 661 F.3d at 1013-15. "Doe wrote numerous letters and made scores of phone calls from prison to remind his attorney of the deadline, and received assurances from the attorney that the petition would be filed." *Id.* at 1013. Fowler has given no indication that he made "scores" of phone calls to Crowley. When Doe came to realize that his attorney was doing nothing, he "pursued grievances with state authorities." *Id.* It was not Fowler but others, with no connection to him, who brought grievance proceedings against Crowley. Finally, "[w]hen Doe's attorney finally informed him that *no* petition was forthcoming after four years of representations to the contrary and then delayed six months in returning Doe's files, Doe managed to file this Petition *in ten days*." *Id.* at 1015 (second emphasis added). Fowler was not so quick. While Fowler's replacement counsel filed the "placeholder" petition 12 days after he first met with Darryl Fowler, Suppl. Br. of Pet'r App., Ex. F (Decl. of Darryl Fowler) (Wash. Ct. App. No. 51029-4-II (2018)), Fowler, through this counsel, did not manage to file his supplemental, substantive PRP until March 2018—about six *months* after

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

replacement counsel was hired. Fowler's efforts were a far cry from the diligence on display in *Doe*.

The majority opines that under its newly adopted federal standard, "[t]he diligence required for equitable tolling is not exceptional diligence or maximum feasible diligence"; rather, the petitioner must only act "as diligently as reasonably can be expected under the circumstances." Majority at 12 (internal quotation marks and citations omitted). But insofar as cases like *Doe* and *Spitsyn* demonstrate the standard for reasonable diligence, Fowler simply does not meet it.

## CONCLUSION

I agree with Part I of the majority opinion and that equitable tolling may be premised on the actions of one's counsel. However, I disagree with the majority's decision to adopt the federal standard in addition to our own. Instead we should adhere solely to our precedent regarding the standard for equitable tolling. Further, we should affirm the Court of Appeals, as Fowler was not diligent under either our state standard or the federal standard.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In the Matter of the Pers. Restraint of Fowler (Vincent L.)*, No. 97456-0
Whitener, J. (dissenting)

For the foregoing reasons, I respectfully dissent.

_____
Whitener, J.

_____
Owens, J.

_____
Stephens, J.